1  Joseph J. Siprut*
   *jsiprut@siprut.com*
2  James M. McClintick
   *jmcclintick@siprut.com*
3  SIPRUT PC
   122 South Michigan Ave.
4  Suite 1850
   Chicago, Illinois 60603
5  312.588.1440
6  Fax: 312.427.1850

7  Todd C. Atkins
   *tatkins@siprut.com*
8  SIPRUT PC
9  701 B Street, Suite 1170
   San Diego, CA 92101
10 619. 255.2380
   Fax: 619.231.4984
11
12 *Pro hac vice* admittance to be sought

13 *Counsel for Plaintiffs and the Proposed Putative Classes*

14

15 **IN THE UNITED STATES DISTRICT COURT**

16 **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

17 ROBERT HODSDON and LESLIE GOLBA,
   on behalf of themselves and all others
18 similarly situated,                          **CV 12 2827**

19              Plaintiffs,

20       v.                                      **CLASS ACTION COMPLAINT**

21 DIRECTV, LLC,

22              Defendant.                       **DEMAND FOR JURY TRIAL**

23

24

25

26

27

28                                              ORIGINAL

1  Plaintiffs Robert Hodsdon, and Leslie Golba (collectively, "Plaintiffs"), individually and
2  on behalf of all others similarly situated, by and through their counsel, bring this Class Action
3  Complaint against Defendant DirecTV, LLC ("DirecTV" or "Defendant").  Plaintiffs, on their
4  own behalf and on behalf of a class of similarly situated individuals, allege as follows upon
5  personal knowledge as to themselves and their own acts and experiences, and, as to all other
6  matters, upon information and belief, including investigation conducted by their attorneys.

## I.   NATURE OF THE ACTION

8      1.     Cable and satellite television are a staple in American households, viewed by
9  many to be as ordinary and essential as gas and electric service.  As one of the nation's best-
10  recognized and fastest-growing satellite television providers, DirecTV uses its position to collect
11  personal information – such as names, addresses, social security numbers, and credit card
12  numbers – from tens of millions of consumers across the country.

13      2.     After consumers terminate their service with DirecTV, however, and this
14  information is no longer needed to provide service or collect payment, DirecTV continues to
15  maintain personally identifiable information on all of its previous customers indefinitely.  This
16  conduct violates the Satellite Home Viewer Extension and Reauthorization Act, 47 U.S.C. § 338,
17  *et. seq.* ("SHVERA"), which requires satellite operators to destroy personally identifiable
18  information when it is no longer required for the purpose for which it was collected.

19      3.     Moreover, consumers are unaware that their personally identifiable information is
20  retained indefinitely by DirecTV, as DirecTV fails to send annual privacy notices informing
21  consumers that DirecTV continues to retain their information.   This conduct constitutes
22  additional violations of SHVERA.

23      4.     Accordingly, Plaintiffs assert claims on their own behalf and on behalf of the
24  other members of the below-defined Class for violations of SHVERA, 47 U.S.C. § 338 (i)(1) &
25  (i)(6), plus additional claims under California state law on behalf of a California Subclass.

26
27
28

## II.   JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, which confers upon the Court original jurisdiction over all civil actions arising under the laws of the United States, and pursuant to 18 U.S.C. §§ 2520 and 2707 and 18 U.S.C. § 1030.  This Court also has supplemental jurisdiction over Plaintiffs' state statutory claims and common-law claims under 28 U.S.C. § 1367.

6.     In addition, this Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).  In the aggregate, Plaintiffs' claims and the claims of the other members of the Class exceed $5,000,000 exclusive of interest and costs, and there are numerous class members who are citizens of states other than DirecTV.

7.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1301(a)(2), 1391(b)(2), and 1391(c)(2) as: a substantial part of the events and/or omissions giving rise to the claims emanated from activities within this District, and DirecTV conducts substantial business in this District.   Specifically, DirecTV provides cable and Internet services for residents and commercial facilities in towns and cities throughout this District, subjecting it to this Court's personal jurisdiction and making it a "resident" of this District for purposes of venue.

## III.   PARTIES

*Plaintiffs*

8.     Robert Hodsdon ("Hodsdon") is a natural person and citizen of the State of California.

9.     Leslie Golba ("Golba") is a natural person and citizen of the State of California.

*Defendant*

10.     DirecTV is a California corporation headquartered at 2230 East Imperial Highway in El Segundo, California.  DirecTV is a rapidly expanding provider of direct broadcast satellite service, with nearly 20 million customers in the United States, Latin America, and the Caribbean. DirecTV provides satellite services to customers in all 50 states.

## IV.  FACTUAL BACKGROUND

*The Cable Communications Policy Act*

11.　　On December 8, 2004, Congress passed the Satellite Home Viewer Extension and Reauthorization Act ("SHVERA"), which amended Section 338 of the Communications Act of 1934.  In addition to establishing new requirements for satellite transmittal of local stations, SHVERA expanded Section 338 to include privacy safeguards for those who subscribe to satellite television service.  A primary objective of this legislation was to protect satellite subscribers' sensitive personal information from misuse as well as improper retention and disclosure.  In addition, the legislation aimed to bring the rights of satellite subscribers into line with similar rights already enjoyed by cable subscribers under the Cable Communications Policy Act of 1984 ("CCPA").

12.　　In fact, when the CCPA was under debate, legislative leaders noted that both common-sense privacy concerns and the constitutional rights of citizens were at stake:

> Cable systems, particularly those with a 'two-way' capability, have an enormous capacity to collect and store personally identifiable information about each cable subscriber.  Subscriber records from interactive systems can reveal details about bank transactions, shopping habits, political contributions, viewing habits and other significant personal decisions.  It is [therefore] important that national cable legislation establish a policy to protect the privacy of cable subscribers.  A national policy is needed because, while some franchise agreements restrict the cable operator's use of such information, privacy issues raise a number of federal concerns, including protection of the subscribers' first, fourth, and fifth amendment rights.  At the same time, such a policy must also recognize and unnecessarily or unreasonably impede those flows of information necessary to provide the service to the subscribers.

H.R. Rep. 98-934 at 4666-67 (1984).

13.　　Although they are nearly 30 years old, these observations are just as relevant today and apply with equal force to subscribers of satellite television service.  Now – far more than ever before – DirecTV and other satellite services are equipped to rapidly collect and indefinitely retain large volumes of this valuable data in their electronic records.

14. There are numerous serious and troubling privacy issues implicated by DirecTV's practice of retaining and misusing their former customers' personal information, including the risk of identity theft and conversion of personal financial accounts.

15. Accordingly, SHVERA affords consumers significant protection with respect to the collection, maintenance, and disclosure of personally identifiable information ("PII") provided by the subscriber to the cable operator.

16. Specifically, SHVERA requires cable operators to provide annual notice setting forth the "nature of personally identifiable information collected;" "the nature, frequency, and purpose of any disclosure" of that information; the "period during which such information will be maintained;" "the times and place at which the subscriber may have access to such information;" and the limitations imposed on the satellite carrier by this provision of SHVERA. 47 U.S.C. § 338 (i)(1).

17. In addition, SHVERA governs the way that satellite operators are to destroy the PII of former subscribers. SHVERA requires that cable operators must destroy the PII of former subscribers "if the information is no longer necessary for the purpose for which it was collected" and there are no outstanding requests or orders for such information. 47 U.S.C. § 338 (i)(6).

18. Under SHVERA, "personally identifiable information" is not specifically defined. However, in the context of the CCPA, the courts have concluded that it broadly encompasses "specific information about the subscriber, or a list of names and addresses on which the subscriber is included."[1]

### DirecTV's Collection of Consumers' PII

19. Founded in 1994 and based in El Segundo, California, DirecTV is a rapidly growing satellite television service that transmits digital satellite television and audio functions to households.[2] DirecTV has nearly 20 million subscribers in the United States, Latin America,

---

[1] See, e.g., Scofield v. Telecable of Overland Park, Inc., 973 F.2d 874, 876 fn. 2 (10th Cir. 1992).

[2] http://en.m.wikipedia.org/wiki/DirecTV (last visited May 30, 2012).

and English-speaking Caribbean countries such as the Bahamas and Jamaica.[3]   In 2011, the company earned more than $27 billion in gross revenues and had a net income of approximately $2.6 billion.[4]

20.     DirecTV requests that subscribers provide PII to DirecTV in order to receive satellite service, including social security number, address, phone number, and credit and debit card information.

21.     Once DirecTV obtains that information, it maintains a digital record system with every subscriber's personal information, adding to each consumer's file as they acquire more information.

22.     DirecTV's online Privacy Policy provides as follows:

> We maintain personally identifiable information as long as necessary for the purpose(s) for which it was collected or as required by law.  When such information is no longer necessary for our business purposes, we destroy it unless there is an outstanding request or order to preserve it.[5]

**_DirecTV's Unlawful Retention of Consumers' PII_**

23.     While DirecTV's Privacy Policy claims that consumer information is destroyed "when such information is no longer necessary for [DirecTV's] business purposes," in practice, DirecTV simply retains consumers' PII indefinitely.

24.     This indefinite retention of PII is prohibited by SHVERA, which requires cable operators to "destroy personally identifiable information if the information is no longer necessary for the purpose for which it was collected." 47 U.S.C. § 338(i)(6).

25.     DirecTV also fails to provide SHVERA-mandated privacy notices to customers whose accounts have been closed, but whose information is still retained by DirecTV.  Those consumers are thus unaware that their information is retained indefinitely by DirecTV.

---

[3] *Id.*

[4] *2010 Form 10-K, DirecTV*, United States Securities and Exchange Commission (Dec. 31, 2011).

[5] http://www.directv.com/DTVAPP/content/legal/privacy_policy?lang=en_US&_requestid=17756 01 (last visited May 30, 2012).

26. SHVERA requires that cable operators provide written notice at least once a year regarding the retention and disclosure of PII, "clearly and conspicuously" informing the consumer of "the nature of personally identifiable information collected ... and the nature of the use of such information; [ ] the nature, frequency, and purpose of any disclosure which may be made of such information, including an identification of the types of persons to whom the disclosure may be made; [ ] the period during which such information will be maintained by the cable operator; [and] the times and places at which the subscriber may have access to such information." 47 U.S.C. § 338(i)(1).

27. After the termination of services, DirecTV fails to provide notice to consumers regarding the type of PII collected and retained, and any disclosure of that information that may have occurred.

### Consumers Place a High Value on Their PII

28. At a Federal Trade Commission ("FTC") public workshop in 2001, then-Commissioner Orson Swindle described the value of a consumer's personal information as follows:

> The use of third party information from public records, information aggregators and even competitors for marketing has become a major facilitator of our retail economy. Even [Federal Reserve] Chairman [Alan] Greenspan suggested here some time ago that it's something on the order of the life blood, the free flow of information.[6]

29. Though Commissioner's Swindle's remarks are more than a decade old, they are even more relevant today, as consumers' personal data functions as a "new form of currency" that supports a $26 billion per year online advertising industry in the United States.[7]

---

[6] *The Information Marketplace: Merging and Exchanging Consumer Data*, http://www.ftc.gov/bcp/workshops/infomktplace/transcript.htm (last visited May 20, 2012).

[7] *See Web's Hot New Commodity: Privacy*, http://online.wsj.com/article/SB10001424052748703529004576160764037920274.html (last visited May 20, 2012).

30. The FTC has also recognized that consumer data is a new – and valuable – form of currency. In a recent FTC roundtable presentation, another former Commissioner, Pamela Jones Harbour, underscored this point by observing:

> Most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency. The larger the data set, the greater potential for analysis – and profit.[8]

31. Recognizing the high value that consumers place on their PII, many companies now offer consumers an opportunity to sell this information to advertisers and other third parties. The idea is to give consumers more power and control over the type of information that they share – and who ultimately receives that information. And by making the transaction transparent, consumers will make a profit from the surrender of their PII.[9] This business has created a new market for the sale and purchase of this valuable data.[10]

32. In fact, consumers not only place a high value on their PII, but also place a high value on the *privacy* of this data. Thus, the question is not *whether* consumers value such privacy; the question is "*how much* [consumers] value" that privacy.[11]

33. Researchers have already begun to shed light on how much consumers value their data privacy – and the amount is considerable. Indeed, studies confirm that "when [retailers']

---

[8] *Statement of FTC Commissioner Pamela Jones Harbour* (Remarks Before FTC Exploring Privacy Roundtable), http://www.ftc.gov/speeches/harbour/091207privacyroundtable.pdf (last visited May 20, 2012).

[9] *You Want My Personal Data? Reward Me for It*, http://www.nytimes.com/2010/07/18/business/18unboxed.html (last visited May 20, 2012).

[10] *See Web's Hot New Commodity: Privacy*, http://online.wsj.com/article/SB10001424052748703529004576160764037920274.html (last visited May 20, 2012).

[11] Hann *et al.*, *The Value of Online Information Privacy: An Empirical Investigation* (Mar. 2003) at 2, *available at* http://www.comp.nus.edu.sg/~ipng/research/privacy.pdf (emphasis added) (last visited April 25, 2012).

privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[12]

34.    When consumers were surveyed as to how much they valued their personal data in terms of its protection against improper access and unauthorized secondary use – two concerns at issue here – they valued the restriction of improper access to their data at between $11.33 and $16.58 per website, and prohibiting secondary use to between $7.98 and $11.68 per website.[13]

35.    Given these facts, any company that transacts business with a consumer and then retains that consumer's PII in contravention of statutorily guaranteed privacy protections has thus deprived that consumer of the full monetary value of the consumer's transaction with the company.

***Facts Pertaining to Plaintiff Golba***

36.    In or about July 2003, Golba signed up for DirecTV satellite services. Golba provided DirecTV with PII including her address, telephone number, and social security number, in order to receive the service.

37.    In or about May 2006, Golba canceled her service with DirecTV.

38.    On information and belief, as of the date of this filing, DirecTV still retains Golba's PII.

39.    Since canceling her service, Golba has never received notice from DirecTV informing her that DirecTV still retains her PII. Specifically, Golba has not received any notices from DirecTV informing her of the nature of the information collected; the nature, purpose and frequency of any disclosure which was made of this information; the period of time during which DirecTV will maintain this information; and the time and place that Golba may gain access to this information.

---

[12] Tsai, Cranor, Acquisti, and Egelman, *The Effect of Online Privacy Information on Purchasing Behavior*, 22(2) Information Systems Research 254, 254 (June 2011).

[13] *Id.*

1   ***Facts Pertaining to Plaintiff Hodsdon***

2      40.     In or about January 2001, Hodsdon signed up for DirecTV satellite services.

3   Hodson provided DirecTV with PII including his address, telephone number, and social security

4   number, in order to receive cable services.

5      41.     In or about January 2011, Hodsdon canceled his service with DirecTV.

6      42.     On information and belief, as of the date of this filing, DirecTV still retains

7   Hodsdon's PII.

8      43.     Since canceling his service, Hodsdon has never received notice from DirecTV

9   informing him that DirecTV still retains his PII. Specifically, Hodsdon has not received any

10  notices from DirecTV informing him of the nature of the information collected; the nature,

11  purpose and frequency of any disclosure which was made of this information; the period of time

12  during which DirecTV will maintain this information; and the time and place that Hodsdon may

13  gain access to this information.

14                          **V.   CLASS ACTION ALLEGATIONS**

15     44.     Plaintiffs bring Count I, as set forth below, on behalf of themselves and as a class

16  action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil

17  Procedure on behalf of a class defined as:

18              All persons in the United States who signed up for satellite service
19              with DirecTV, and whose personally identifiable information was
                retained by DirecTV after the termination of services (the
20              "Retention Class").

21  Excluded from the Retention Class are DirecTV and its subsidiaries and affiliates; all persons

22  who make a timely election to be excluded from the Class; governmental entities; and the judge

23  to whom this case is assigned and any immediate family members thereof.

24     45.     Plaintiffs brings Count II, as set forth below, on behalf of themselves and as a

25  class action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of

26  Civil Procedure on behalf of a class defined as:

27

28

> All persons in the United States who signed up for satellite service with DirecTV, and who were never issued annual written notices from DirecTV regarding DirecTV's retention or disclosure of their personally identifiable information (the "Notice Class").

Excluded from the Notice Class are DirecTV and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and any immediate family members thereof.

46.     Plaintiffs bring Counts III-V, as set forth below, on behalf of themselves and as a class action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class defined as:

> All persons residing in the State of California who signed up for satellite service with DirecTV, and whose personally identifiable information was retained by DirecTV after the termination of services (the "California State Class").

Excluded from the California State Class are DirecTV and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and any immediate family members thereof.

47.     The Retention Class, Notice Class, and California State Class shall be referred to collectively as "the Class" below unless otherwise specified.

48.     Certification of Plaintiffs' claims for classwide treatment is appropriate because Plaintiffs can prove the elements of their claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

49.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the class are so numerous that individual joinder of all Class members in impracticable. On information and belief, there are thousands of consumers who have been affected by DirecTV's wrongful conduct. The precise number of the Class members and their addresses is presently unknown to Plaintiffs, but may be ascertained from DirecTV's books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice

1  dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or

2  published notice.

3      50.    **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2)**

4  **and 23(b)(3).**  This action involves common questions of law and fact, which predominate over

5  any questions affecting individual Class members, including, without limitation:

6          a. whether DirecTV engaged in the conduct as alleged herein;

7          b. whether Plaintiffs and the other Class members are entitled to actual, statutory, or

8              other forms of damages, and other monetary relief and, if so, in what amount(s);

9              and

10         c. whether Plaintiffs and other Class members are entitled to equitable relief, including

11             but not limited to injunctive relief and restitution.

12     51.    **Typicality – Federal Rule of Civil Procedure 23(a)(3).**  Plaintiffs' claims are

13  typical of the other Class members' claims because, among other things, all Class members were

14  comparably injured through the uniform misconduct described above.

15     52.    **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4)**.

16  Plaintiffs are adequate representatives of the Class because their interests do not conflict with the

17  interests of the other Class members they seek to represent; they have retained counsel

18  competent and experienced in complex class action litigation; and Plaintiffs intend to prosecute

19  this action vigorously.  The Class members' interests will be fairly and adequately protected by

20  Plaintiffs and their counsel.

21     53.    **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).**

22  DirecTV has acted or refused to act on grounds generally applicable to Plaintiffs and the other

23  Class members, thereby making appropriate final injunctive relief and declaratory relief, as

24  described below, with respect to Class members as a whole.

25     54.    **Superiority – Federal Rule of Civil Procedure 23(b)(3).**  A class action is

26  superior to any other available means for the fair and efficient adjudication of this controversy,

27

28

and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against DirecTV, so it would be impracticable for Class members to individually seek redress from DirecTV's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potentional for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI. CLAIMS ALLEGED

### COUNT I
**Failure to Destroy Personally Identifiable Information
Violation of § 338(i)(6) of SHVERA
(On Behalf of the Retention Class)**

55.     Plaintiffs incorporate by reference the allegations contained in Paragraphs 1-54 as though fully set forth herein.

56.     DirecTV is a "satellite carrier" as defined by SHVERA because DirecTV is "an entity that uses the facilities of a satellite or satellite service licensed by the Federal Communications Commission" in order to "establish and operate a channel of communications for point-to-multipoint distribution of television station signals, and that owns or leases a capacity or service on a satellite in order to provide such point-to-multipoint distribution." 17 U.S.C. § 119(d)(6).

57.     SHVERA mandates, among other things, that a cable operator "destroy personally identifiable information if the information is no longer necessary for the purpose for which is was collected." 47 U.S.C. § 338(i)(6).

58. After Plaintiffs' accounts and the accounts of each of the members of the Retention Class were terminated, DirecTV continued to maintain Plaintiffs' PII even though such information was no longer necessary to maintain for the purpose for which it was collected.

59. The foregoing conduct violates 47 U.S.C. § 338(i)(6).

60. Plaintiffs and the Retention Class have suffered injuries as a result of DirecTV's violation of 47 U.S.C. § 338(i)(6). DirecTV's failure to destroy the PII of Plaintiffs and the Retention Class, as required 47 U.S.C. § 338(i)(6), constitutes injury in the form of a direct invasion of their federally protected privacy rights. In addition, DirecTV's failure to comply with SHVERA has deprived Plaintiffs and the Retention Class of their ability to make informed decisions with respect to their privacy.

61. Moreover, since Plaintiffs and the Retention Class purchased satellite services from DirecTV, and DirecTV was obligated to comply with SHVERA, DirecTV's failure to destroy their PII deprived them of the full value of the services that they bargained and paid for. Because Plaintiffs and the Retention Class ascribe monetary value to their ability to control their PII, Plaintiffs and the Retention Class have sustained, and continue to sustain, monetary and economic injuries as a direct and proximate result of DirecTV's violation of 47 U.S.C. § 338(i)(6).

62. Plaintiffs' and the Retention Class' PII constitutes personal property. DirecTV's failure to comply with 47 U.S.C. § 338(i)(6) has also deprived Plaintiffs and the Retention Class of the opportunity to control that personal property for its own financial gain. Accordingly, Plaintiffs and the Retention Class have sustained, and continue to sustain, monetary and economic injuries as a direct and proximate result of DirecTV's violation of 47 U.S.C. § 338(i)(6).

63. SHVERA provides a private right of action to consumers who have been aggrieved by a violation of 47 U.S.C. § 338. Specifically, any person aggrieved by any act of a cable operator violating 47 U.S.C. § 338 may recover "actual damages but not less than

1  liquidated damages computed at the rate of $100 a day for each day of violation or $1,000,
2  whichever is higher."  47 U.S.C. § 338(i)(7)(A).

3      64.      In addition, any person aggrieved by any act of a cable operator violating 47
4  U.S.C. § 551 may recover punitive damages and "reasonable attorneys' fees and other litigation
5  costs reasonably incurred."  47 U.S.C. § 338(i)(7)(B)&(C).

6      65.      Plaintiffs, on behalf of themselves and the Retention Class, therefore seek redress
7  as provided by 47 U.S.C. § 338(i)(6), including liquidated damages to the full extent permitted
8  by SHVERA, punitive damages, and reasonable attorneys' fees and other litigation costs.

9                            **COUNT II**
                   **Failure to Provide Adequate Notice**
10                 **Violation of § 338(i)(6) of SHVERA**
                     **(On Behalf of the Notice Class)**
11

12      66.      Plaintiffs incorporate by reference the allegations contained in Paragraphs 1-54 as
13  though fully set forth herein.

14      67.      After the termination of services, DirecTV continued to maintain Plaintiffs' PII
15  and the PII of each of the members of the Notice Class.

16      68.      Plaintiffs and each of the members of the Notice Class did not receive a yearly
17  privacy notice from DirecTV as required under SHVERA.

18      69.      The foregoing conduct violates 47 U.S.C. § 338(i)(1).

19      70.      Plaintiffs and the Notice Class have suffered injuries as a result of DirecTV's
20  violation of 47 U.S.C. § 338(i)(1).  DirecTV's failure to issue annual notices under SHVERA, as
21  required by 47 U.S.C. § 338(i)(1), constitutes injury in the form of a direct invasion of the
22  federally protected privacy rights of Plaintiffs and the Notice Class.  In addition, DirecTV's
23  failure to comply with SHVERA has deprived Plaintiffs and the Notice Class of their ability to
24  make informed decisions with respect to their privacy.

25      71.      Moreover, since Plaintiffs and the Notice Class purchased satellite services from
26  DirecTV, and DirecTV was obligated to comply with SHVERA, DirecTV's failure to issue the
27  requisite annual notices deprived them of the full value of the services that they bargained and

28
                              -15-

paid for. Because Plaintiffs and the Notice Class ascribe monetary value to their ability to control their PII, Plaintiffs and the Notice Class have sustained, and continue to sustain, monetary and economic injuries as a direct and proximate result of DirecTV's violation of 47 U.S.C. § 338(i)(1).

72.     Plaintiffs' and the Notice Class' PII constitutes personal property. DirecTV's failure to comply with 47 U.S.C. § 338(i)(1) has also deprived Plaintiffs and the Notice Class of the opportunity to control that personal property for its own financial gain. Accordingly, Plaintiffs and the Notice Class have sustained, and continue to sustain, monetary and economic injuries as a direct and proximate result of DirecTV's violation of 47 U.S.C. § 338(i)(1).

73.     SHVERA provides a private right of action to consumers who have been aggrieved by a violation of 47 U.S.C. § 338. Specifically, any person aggrieved by any act of a cable operator violating 47 U.S.C. § 338 may recover "actual damages but not less than liquidated damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is higher." 47 U.S.C. § 338(i)(7)(A).

74.     In addition, any person aggrieved by any act of a cable operator violating 47 U.S.C. § 551 may recover punitive damages and "reasonable attorneys' fees and other litigation costs reasonably incurred." 47 U.S.C. § 338(i)(7)(B)&(C).

75.     Plaintiffs, on behalf of themselves and the Notice Class, therefore seeks redress as provided by 47 U.S.C. § 338(i)(1), including liquidated damages to the full extent permitted by SHVERA, punitive damages, and reasonable attorneys' fees and other litigation costs.

**COUNT III**
**Violation of the California Customer Records Act,**
**Cal.Civ.Code § 1798.80, *et seq.***
**(On Behalf of the California State Class)**

76.     Plaintiffs adopt and incorporate by reference paragraphs 1-54 of this Complaint as if fully set forth herein.

77.     The California Customer Records Act ("CCRA") provides, in pertinent part, that

> A business shall take all reasonable steps to dispose, or arrange for the disposal, of customer records within its custody or control containing personal information when the records are no longer to be retained by the business by (a) shredding, (b) erasing, or (c) otherwise modifying the personal information in those records to make it unreadable or indecipherable through any means.

Cal.Civ.Code § 1798.81.

78. Under the CCRA, "personal information" is defined as

> any information that identifies, relates to, describes, or is capable of being associated with, a particular individual, including, but not limited to, his or her name, signature, social security number, physical characteristics or description, address, telephone number, passport number, driver's license or state identification card number, insurance policy number, education, employment, employment history, bank account number, credit card number, debit card number, or any other financial information, medical information, or health insurance information[.]

Cal.Civ.Code § 1798.80 (emphasis added).

79. Plaintiffs and the other members of the California State Class cancelled their subscription to and no longer use DirecTV's services. Therefore, DirecTV no longer has any reason to retain the sensitive personal information of Plaintiffs and the California State Class. Nonetheless, DirecTV has continued to retain this personal information in its records.

80. In addition, on information and belief, DirecTV has not taken a single step toward shredding, erasing, encrypting, or otherwise modifying Plaintiffs' and the California State Class' personal information so as to make it unreadable or undecipherable by others.

81. Plaintiffs and the California State Class have suffered injuries as a result of DirecTV's violation of the CCRA. DirecTV's failure to destroy their PII as required by the CCRA constitutes injury in the form of a direct invasion of their statutory rights. In addition, DirecTV's failure to comply with the CCRA has deprived Plaintiffs and the California State Class of their ability to make informed decisions with respect to their privacy.

82. Moreover, since Plaintiffs and the California State Class purchased satellite services from DirecTV, and DirecTV was obligated to comply with the CCRA, DirecTV's

1   failure to destroy their PII deprived them of the full value of the services that they bargained and
2   paid for. Because Plaintiffs and the California State Class ascribe monetary value to their ability
3   to control their PII, Plaintiffs and the California State Class have sustained, and continue to
4   sustain, monetary and economic injuries as a direct and proximate result of DirecTV's violation
5   of the CCRA.

6       83.    Plaintiffs' and the California State Class' PII constitutes personal property.
7   DirecTV's failure to comply with the CCRA has also deprived Plaintiff and the California State
8   Class of the opportunity to control that personal property for its own financial gain.
9   Accordingly, Plaintiffs and the California State Class have sustained, and continue to sustain,
10  monetary and economic injuries as a direct and proximate result of DirecTV's violation of the
11  CCRA.

12      84.    The CCRA provides a private right of action to consumers. Specifically, it states
13  that "[a]ny customer injured by a violation of this title may institute a civil action to recover
14  damages." Cal.Civ.Code § 1798.84(b). In addition, the CCRA provides that "any business that
15  violates, proposes to violate, or has violated this title may be enjoined." Cal.Civ.Code §
16  1798.84(e).

17      85.    Plaintiffs, on their own behalf and on behalf of the other members of the
18  California State Class, seeks judgment in her favor and against DirecTV, and awarding her and
19  the other members of the California State Class injunctive relief and the maximum damages
20  available under Cal.Civ.Code § 1798.84.

### COUNT IV
**Breach of Implied Contract**
**(On Behalf of the California State Class)**

23      86.    Plaintiffs adopt and incorporate by reference paragraphs 1-65 and 76-85 of this
24  Complaint as if fully set forth herein.

87.     Those who subscribed to DirecTV's satellite service, including Plaintiffs, were required by DirecTV to provide their social security number, address, phone number, and credit card and debit card information.

88.     In providing this personal data to DirecTV, Plaintiffs and each of the other members of the California State Class entered into an implied contract with DirecTV (the "Contract"). Pursuant to the Contract, DirecTV became obligated to safeguard this data through all reasonable measures. This obligation includes complying with industry standards.

89.     The industry standard applicable to the credit-card transaction described above is set forth in Requirement 3.1 of the Data Security Standard (DSS) promulgated by the Payment Card Industry Security Standards Council. Specifically, that standard requires the merchants to implement the following security measures:

> Keep cardholder data storage to a minimum by implementing data retention and disposal policies, procedures and processes, as follows.
>
> Implement a data retention and disposal policy that includes:
> - Limiting data storage amount and retention time to that which is required for legal, regulatory, and business requirements
> - Processes for secure deletion of data when no longer needed
> - Specific retention requirements for cardholder data
> - A quarterly automatic or manual process for identifying and securely deleting stored cardholder data that exceeds defined retention requirements[.][14]

90.     DirecTV breached its Contract with consumers by failing to adopt and comply with the foregoing industry-standard practices, and by failing to destroy PII after the information is no longer necessary for the purpose for which it was collected.

91.     In addition, because the laws existing at the time and place of the making of the Contract are and were incorporated into the Contract, the Contract included obligations for the parties to abide by all applicable laws, including SHVERA and the CCRA.

---

[14] PCI Security Standards Council LLC, Navigating PCI DDS: Understanding the Intent of the Requirements, v2.0 (October 2010), p. 20.

92.     Plaintiffs and the California State Class performed their obligations under the Contract by paying the consideration owed to Defendant for the provision of cable service, and by complying with all applicable laws then in force.

93.     DirecTV's failure to perform its contractual obligations imposed by SHVERA and the CCRA – i.e., the timely destruction of consumers' PII – constitutes a material breach of the Contract.

94.     Plaintiffs and the California State Class have suffered actual damages as a result of DirecTV's breach in the form of the value Plaintiffs and the California State Class ascribe to the confidentiality and timely destruction of their PII.  This amount is tangible and can be calculated at trial.

95.     Further, a portion of the services purchased by Plaintiffs and the California State Class were intended to pay for DirecTV's costs in timely destroying its customers' PII, as required by SHVERA and the CCRA.

96.     Because Plaintiffs and the California State Class were denied of services that they bargained and paid for and were entitled to receive—i.e., confidentiality of their PII and timely destruction of same—Plaintiffs and the California State Class incurred actual monetary damages in that they overpaid for the services they bargained for.

97.     Accordingly, Plaintiffs and the California State Class seek an order declaring that DirecTV's conduct constitutes a breach of contract, and awarding Plaintiffs and the California State Class damages in an amount to be calculated at trial.

## COUNT V
### Violation of Cal. Penal Code § 637.5
### (On Behalf of the California State Class)

98.     Plaintiffs adopt and incorporate by reference paragraphs 1-54 of this Complaint as if fully set forth herein.

99. Section 637.5 of the California Penal Code provides in pertinent part:

> Individual subscriber viewing responses or other individually identifiable information derived from subscribers *may be retained and used by a satellite or cable television corporation only to the extent reasonably necessary for billing purposes and internal business practices, and to monitor for unauthorized reception of services.* A satellite or cable television corporation may compile, maintain, and distribute a list containing the names and addresses of its subscribers if the list contains no other individually identifiable information and if subscribers are afforded the right to elect not to be included on the list. However, a satellite or cable television corporation shall maintain adequate safeguards to ensure the physical security and confidentiality of the subscriber information.

Cal. Penal Code § 637.5(b) (emphasis added).

100. If a cable operator violates the above section of the California Penal Code, the subscriber may assert a private right of action for invasion of privacy. Section 637.5 provides in pertinent part:

> Any aggrieved person may commence a civil action for damages for invasion of privacy against any satellite or cable television corporation, service provider, or person that leases a channel or channels on a satellite or cable television system that violates the provisions of this section.

Cal. Penal Code § 637.5(i) (the "California Penal Code").

101. Plaintiffs and the other members of the California State Class cancelled their subscription to and no longer use DirecTV's services. Therefore, DirecTV no longer has any reason to retain the sensitive personal information of Plaintiffs and the California State Class. Nonetheless, DirecTV has continued to retain this personal information in its records.

102. In addition, on information and belief, DirecTV has not taken a single step toward shredding, erasing, encrypting, or otherwise modifying Plaintiffs' and the California State Class' personal information so as to make it unreadable or undecipherable by others.

103. Plaintiffs and the California State Class have suffered injuries as a result of DirecTV's violation of the California Penal Code. DirecTV's failure to destroy their PII as required by the California Penal Code constitutes injury in the form of a direct invasion of their statutory rights. In addition, DirecTV's failure to comply with the California Penal Code has

1    deprived Plaintiffs and the California State Class of their ability to make informed decisions with
2    respect to their privacy.

3        104.    Moreover, since Plaintiffs and the California State Class purchased satellite
4    services from DirecTV, and DirecTV was obligated to comply with the California Penal Code,
5    DirecTV's failure to destroy their PII deprived them of the full value of the services that they
6    bargained and paid for. Because Plaintiffs and the California State Class ascribe monetary value
7    to their ability to control their PII, Plaintiffs and the California State Class have sustained, and
8    continue to sustain, monetary and economic injuries as a direct and proximate result of
9    DirecTV's violation of the California Penal Code.

10       105.    Plaintiffs' and the California State Class' PII constitutes personal property.
11    DirecTV's failure to comply with the CCRA has also deprived Plaintiffs and the California State
12    Class of the opportunity to control that personal property for its own financial gain.
13    Accordingly, Plaintiffs and the California State Class have sustained, and continue to sustain,
14    monetary and economic injuries as a direct and proximate result of DirecTV's violation of the
15    California Penal Code.

16       106.    Plaintiffs, on their own behalf and on behalf of the other members of the
17    California State Class, seeks judgment in her favor and against DirecTV, and awarding them and
18    the other members of the California State Class injunctive relief and the maximum statutory
19    damages available under California Penal Code.

### VII.    JURY DEMAND

21       Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by
22    jury of all claims in this Complaint so triable.

CLASS ACTION COMPLAINT

-22-

1

## VIII. **REQUEST FOR RELIEF**

2       WHEREFORE, Plaintiffs, individually and on behalf of the other members of the Classes

3   proposed in this Complaint, respectfully request that the Court enter an Order awarding the

4   following relief:

5       A.  Declaring that this action may be maintained as a class action, and certifying the

6           Classes as requested herein;

7       B.  Enjoining DirecTV from the unlawful practices and statutory violations asserted

8           herein;

9       C.  An Order awarding liquidated damages pursuant to SHVERA;

10      D.  An Order awarding punitive damages pursuant to SHVERA;

11      E.  An Order awarding compensatory damages pursuant to the California statutes and

12          common-law causes of action asserted herein;

13      F.  An Order awarding attorneys' fees and costs pursuant to SHVERA; and

14      G.  Such other and further relief as may be just and proper.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

Dated: May 31, 2012

Respectfully submitted,

ROBERT HODSDON and LESLIE GOLBA, on behalf of themselves and all others similarly situated,

By: _____

One of the Attorneys for Plaintiffs
and the Proposed Putative Classes

Joseph J. Siprut*
*jsiprut@siprut.com*
James M. McClintick
*jmcclintick@siprut.com*
SIPRUT PC
122 South Michigan Avenue
Suite 1850
Chicago, Illinois 60603
312.588.1440
Fax: 312.427.1850

Todd C. Atkins
*tatkins@siprut.com*
SIPRUT PC
701 B Street, Suite 1170
San Diego, CA 92101
619. 255.2380
Fax: 619.231.4984

*Pro hac vice* admittance to be sought

4845-9394-0751, v. 1

CLASS ACTION COMPLAINT

-24-