1  Melissa D. Ingalls (SBN 174861)
   melissa.ingalls@kirkland.com
2  Robyn E. Bladow (SBN 205189)
   robyn.bladow@kirkland.com
3  Sierra Elizabeth (SBN 268133)
   sierra.elizabeth@kirkland.com
4  KIRKLAND & ELLIS LLP
   333 South Hope Street
5  Los Angeles, California 90071
   Telephone: (213) 680-8400
6  Facsimile:  (213) 680-8500
7

8  Attorneys for Defendant DIRECTV, LLC

9
                    **IN THE UNITED STATES DISTRICT COURT**
10
              **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
11

12 ROBERT HODSDON and LESLIE          )   Case No.  CV-12-2827-JSW
   GOLBA, on behalf of themselves and all )
13 others similarly situated,            )   The Honorable Jeffrey S. White
                                         )
14            Plaintiffs,                )   **DIRECTV'S MOTION TO DISMISS OR**
                                         )   **STAY PROCEEDINGS PENDING**
15       v.                             )   **ARBITRATION AND TO COMPEL**
                                         )   **ARBITRATION, OR IN THE ALTERNATIVE,**
16 DIRECTV, LLC,                        )   **TO DISMISS PLAINTIFFS' COMPLAINT**
                                         )   **PURSUANT TO FEDERAL RULES OF**
17            Defendant.                )   **CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)**
                                         )
18                                       )   Hearing Date:  October 12, 2012
                                         )   Time:  9:00 a.m.
19                                       )   Courtroom 11
                                         )
20                                       )
                                         )   Case Filed:  June 1, 2012
21                                       )   Trial Date:  TBD
                                         )
22 ─────────────────────────────────────)

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION ........................................................................ vi

SUMMARY OF ISSUES AND ARGUMENT ............................................................ vii

BACKGROUND ............................................................................................................1

    I.   PLAINTIFFS RECEIVED AND ACCEPTED THE DIRECTV CUSTOMER AGREEMENT, WHICH CONTAINS AN ARBITRATION PROVISION. ................1

    II.  PLAINTIFFS ALSO RECEIVED THE DIRECTV PRIVACY POLICY, WHICH CONFIRMED THAT PRIVACY DISPUTES MUST BE ARBITRATED ................3

ARGUMENT ................................................................................................................4

    I.   THE COURT SHOULD COMPEL ARBITRATION IN ACCORDANCE WITH THE PARTIES' ARBITRATION AGREEMENTS. ...................................................4

        A.  The Customer Agreement Governs The Relationships Between DIRECTV And Plaintiffs And Requires Arbitration Of Disputes.......................................5

        B.  This Dispute Falls Within The Arbitration Provisions' Broad Scope. .............6

        C.  The Parties' Arbitration Agreements Are Valid And Enforceable...................6

    II.  IF THE COURT DECLINES TO COMPEL ARBITRATION, IT SHOULD DISMISS THE COMPLAINT IN ITS ENTIRETY. ....................................................8

        A.  The Court Should Dismiss The Complaint Pursuant To Rule 12(b)(1) Because Plaintiffs Fail To Allege The Injury-In-Fact Necessary For Article III Standing. ........................................................................................8

        B.  The Court Should Dismiss The Complaint Pursuant To Rule 12(b)(6) Because Plaintiffs Fail To State A Claim For Which Relief May Be Granted..................................................................................................10

            1.  Plaintiffs do not state a claim under the Satellite Home Viewer Extension and Reauthorization Act. ...................................................10

            2.  Plaintiffs do not state a claim under the California Customer Records Act.........................................................................................13

            3.  Plaintiffs do not state a claim for breach of an implied contract because they agreed to an express contract addressing the same subject matter. ...........................................................................14

            4.  Plaintiffs do not state a claim under California Penal Code § 637.5 because DIRECTV retains Plaintiffs' personally identifiable information for legitimate business reasons. ......................................15

CONCLUSION................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*AT&T Mobility LLC v. Concepcion,*
131 S. Ct. 1740 (2011)....................................................................... vii, 4, 6, 7

*AT&T Techs., Inc.* v. *Commc'ns Workers of Am.,*
475 U.S. 643 (1986)............................................................................ 6

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)............................................................................ 10, 12

*Bischoff v. DirecTV, Inc.,*
180 F. Supp. 2d 1097 (C.D. Cal. 2002) ........................................... 5

*Boorstein v. Men's Journal LLC,*
2012 WL 2152815 (C.D. Cal. June 14, 2012) .................................. 13

*Busey v. P.W. Supermarkets, Inc.,*
368 F. Supp. 2d 1045 (N.D. Cal. 2005) ........................................... 14

*Carnival Cruise Lines, Inc. v. Shute,*
499 U.S. 585 (1991)............................................................................ 5

*Craig v. Brown & Root, Inc.,*
84 Cal. App. 4th 416 (2000) ............................................................. 5

*Crain v. Credit Protection Assoc.,*
2010 WL 122317 (N.D. Tex. Mar. 2, 2010) ..................................... 12

*Cruz v. Cingular Wireless LLC,*
648 F.3d 1205 (11th Cir. 2011) ........................................................ 7

*Day v. Persels & Assocs.,*
2011 WL 1770300  (M.D. Fla. May 9, 2011) ................................... 7

*Doe 1 v. AOL LLC,*
719 F. Supp. 2d 1102 (N.D. Cal. 2010), ......................................... 13

*Doe v. Chao,*
540 U.S. 614 (2004)............................................................................ 11

*Edwards v. First Am. Corp.,*
610 F.3d 514 (9th Cir. 2010) ............................................................ 9, 10

*Gainesville Health Care Ctr., Inc. v. Weston,*
857 So. 2d 278 (Fla. Dist. Ct. App. 2003) ....................................... 7

*Golba et al. v. White House Black Market, Inc.,*
3:11-cv-02774 (S.D. Cal. Nov. 29, 2011) ......................................... 5

ii

*Golba v. Citigroup, Inc.*,
    8:11-cv-01003, Dkt. No. 55 (C.D. Cal. March 30, 2012) ............................................ 5, 7

*Golba v. DSW, Inc.*,
    2:11-cv-06615 (C.D. Cal. Aug. 11, 2011) ........................................................................ 5

*Golba v. DSW, Inc.*,
    3:11-cv-02632 (S.D. Cal. Nov. 10, 2011) ........................................................................ 5

*Golba v. The Reader's Digest Assoc., Inc.*,
    8:12-cv-00361 (C.D. Cal. March 8, 2012)*;* ...................................................................... 5

*In re Cal. Title Ins. Antitrust Litig.*,
    2011 WL 2566449 (N.D. Cal. June 27, 2011) ............................................................... 4, 6

*In re DirecTV Early Cancellation Fee Mktg. & Sales Practices Litig.*,
    810 F. Supp. 2d 1060 (C.D. Cal. 2011) ........................................................................... 7

*In re Facebook Privacy Litig.*,
    2011 WL 6176208 (N.D. Cal. Nov. 22, 2011) ............................................................. 9, 14

*In re Facebook Privacy Litig.*,
    791 F. Supp. 2d 705 (N.D. Cal. 2011) ........................................................................... 10

*In re iPhone Application Litig.*,
    2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ................................................................. 9

*In re iPhone Application Litig.*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) ........................................................................... 9

*In re Napster, Inc. Copyright Litig.*,
    462 F. Supp. 2d 1060 (N.D. Cal. 2006) ......................................................................... 12

*In re Zynga Privacy Litig.*,
    2011 WL 7479170 (N.D. Cal. June 15, 2011) ................................................................. 9

*Kilgore v. KeyBank, Nat'l Ass'n*,
    673 F.3d 947 (9th Cir. 2012) ........................................................................................... 7

*LaCourt v. Specific Media*,
    2011 WL 1661532 (C.D. Cal. April 28, 2011) ............................................................. 8, 9

*Low v. LinkedIn Corp.*,
    2011 WL 5509848 (N.D. Cal. Nov. 11, 2011) ............................................................. 8, 9

*Low v. LinkedIn Corp.*,
    2012 WL 2873847 (N.D. Cal. July 12, 2012) ............................................................... 10

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ......................................................................................................... 8

*Mitsui O.S.K. Lines, Ltd. v. Dynasea Corp.*,
    72 Cal. App. 4th 208 (1999) ......................................................................................... 14

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983)........................................................................................................ 4, 6

*Murphy v. DIRECTV, Inc.*,
   2011 WL 3319574 (C.D. Cal. Aug. 2, 2011)........................................................ 5, 7

*Peterson Dev. Co. v. Torrey Pines Bank*,
   233 Cal. App. 3d 103 (1991) .................................................................................... 14

*Rivera v. AT&T Corp.*,
   420 F. Supp. 2d 1312 (S.D. Fla. 2006) ..................................................................... 5

*Rogers v. Am. President Lines, Ltd.*,
   291 F.2d 740 (9th Cir. 1961) .................................................................................... 14

*Ruiz v. Gap, Inc.*,
   622 F. Supp. 2d 908 (N.D. Cal. 2009) ..................................................................... 14

*Sparling v. Hoffman Constr. Co.*,
   864 F.2d 635 (9th Cir. 1988) ...................................................................................... 4

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001). ................................................................................... 10

*Stachurski* v. *DirecTV, Inc.*,
   642 F. Supp. 2d 758 (N.D. Ohio 2009) ..................................................................... 5

*Sterk v. Redbox Automated Retail, LLC*,
   672 F.3d 535 (7th Cir. 2012) .................................................................................... 11

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) .................................................................................... 12

*Truitt v. DirecTV, Inc.*,
   2008 WL 5054570 (E.D. La. Nov. 21, 2008) ........................................................... 5

*Wal-Noon Corp. v. Hill*,
   45 Cal. App. 3d 605 (1975) ............................................................................... 14, 15

*Warner v. Am. Cablevision of Kansas City, Inc.*,
   699 F. Supp. 851 (D. Kan. 1988) ............................................................................ 12

*Warth v. Seldin*,
   422 U.S. 490 (1975) ............................................................................................... 9, 10

*White v. Lee*,
   227 F.3d 1214 (9th Cir. 2000) .................................................................................... 8

*Zubulake v. UBS Warburg LLC*,
   220 F.R.D. 212 (S.D.N.Y. 2003) ............................................................................ 12

**STATUTES**

9 U.S.C. § 1 ............................................................................................................. vi, vii

iv

9 U.S.C. § 2 ............................................................................................................. 4, 6

9 U.S.C. § 3 ................................................................................................................ 4

9 U.S.C. § 4 ................................................................................................................ 4

17 U.S.C. § 122 ................................................................................................ 11, 12, 13

18 U.S.C. § 2710 ...................................................................................................... 11

47 U.S.C. § 338 ................................................................................................... passim

47 U.S.C. § 551 ........................................................................................................ 12

Cal. Civ. Code § 1798.80 ......................................................................................... 6

Cal. Civ. Code § 1798.81 ....................................................................................... 13

Cal. Civ. Code § 1798.83 ....................................................................................... 13

Cal. Civ. Code § 1798.84 ....................................................................................... 13

Cal. Penal Code § 637.5 ..................................................................................... 6, 15

Federal Rule of Civil Procedure 12(b)(1) ......................................................... vi, 8

Federal Rule of Civil Procedure 12(b)(6) ........................................................ vi, 10

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on October 12, 2012, at 9:00 a.m., or as soon thereafter as this motion may be heard in the above-entitled court, located at 450 Golden Gate Avenue, San Francisco, California 94102, in Courtroom 11, Defendant DIRECTV, LLC will, and hereby does, move to stay or dismiss this action pending arbitration and to compel arbitration with Plaintiffs Robert Hodsdon and Leslie Golba, or alternatively, to dismiss Plaintiffs' Complaint.  DIRECTV's motion is brought pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, and alternatively, Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  The motion to compel arbitration is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Valerie McCarthy and attached exhibits, the pleadings and papers on file herein, and such other matters, both oral and documentary, as may properly come before the Court.  The motion to dismiss is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice and attached exhibits, the pleadings and papers on file herein, and such other matters, both oral and documentary, as may properly come before the Court.

DIRECTV seeks an order, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, dismissing or staying this action pending arbitration, and compelling Plaintiffs to arbitrate their disputes in accordance with the parties' arbitration agreements.  Alternatively, DIRECTV seeks an order from the Court, pursuant to Federal Rule of Civil Procedure 12(b)(1), dismissing Plaintiffs' Complaint for lack of subject matter jurisdiction because Plaintiffs fail to allege a cognizable injury-in-fact necessary for Article III standing.  Also in the alternative to an order compelling arbitration, DIRECTV seeks an order from the Court dismissing the Complaint's five causes of action for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).

## **SUMMARY OF ISSUES AND ARGUMENT**

This lawsuit is not your typical privacy lawsuit.  Plaintiffs (former DIRECTV subscribers Leslie Golba and Robert Hodsdon) do not allege that DIRECTV misappropriated, misused, or mishandled their personally identifiable information, nor that DIRECTV gave their information to third parties.  Plaintiffs do not even allege that DIRECTV maintained their information for an improper purpose.  They just allege that DIRECTV maintained the information.  That is not enough to state a claim.  Putting aside the Complaint's numerous deficiencies, however, Plaintiffs cannot assert their claims in court because they agreed to arbitrate this dispute with DIRECTV.

Part I of the Argument explains that the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (the "FAA") requires enforcement of the parties' arbitration agreements here.  Not only do the arbitration agreements encompass disputes like this one, but they also make arbitration convenient and affordable for Mr. Hodsdon and Ms. Golba, shifting the arbitration costs to DIRECTV and giving these customers the convenience of arbitrating in their hometowns and the predictability of having the laws of the states where they received service apply.  If Plaintiffs try to argue that their arbitration agreements are unenforceable, such arguments have been routinely rejected, especially since the Supreme Court's decision in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011).  Indeed, the DIRECTV arbitration agreements at issue here have been enforced by courts around this country, both before and after *Concepcion*.  This Court too should compel arbitration.

If this Court declines to compel arbitration, Part II of the Argument demonstrates that the Complaint does not state a single claim for which relief may be granted.  As a threshold matter, Plaintiffs have no Article III standing because they allege no cognizable injury.  Nor do Plaintiffs have statutory standing to assert any of their statutory claims.  Finally, assuming every statement in their Complaint is true, Plaintiffs have not stated a single valid claim against DIRECTV.  Plaintiffs' counsel has filed this same type of complaint against many different defendants, but even the most generous reading of this one falls short of anything actionable.

This Court should grant DIRECTV's Motion and enforce the parties' arbitration agreements, or, alternatively, dismiss Plaintiffs' Complaint in its entirety.

DIRECTV'S MOTION TO COMPEL ARBITRATION,                                     Case No. CV-12-2827-JSW
OR IN THE ALTERNATIVE, TO DISMISS PLAINTIFFS' COMPLAINT

1

## BACKGROUND

2   　　　As with most, if not all, consumer services, there are terms and conditions that accompany

3   the provision and receipt of DIRECTV programming services.  Those terms and conditions are

4   principally contained in the DIRECTV Customer Agreement.  *See* Declaration of Valerie McCarthy

5   (filed concurrently) ("McCarthy Decl.") ¶ 3.[1]  DIRECTV customers also receive the DIRECTV

6   Privacy Policy, which relates to the collection, use, disclosure, and retention of customers'

7   personally identifiable information.  *Id.* ¶ 9.  Below, DIRECTV describes how Plaintiffs Golba and

8   Hodsdon entered into their Customer Agreements and Privacy Policies, and sets forth the relevant

9   terms of those agreements, including the arbitration provisions.

10   **I.　　PLAINTIFFS RECEIVED AND ACCEPTED THE DIRECTV CUSTOMER
        AGREEMENT, WHICH CONTAINS AN ARBITRATION PROVISION.**

11

12   　　　The DIRECTV Customer Agreement has always been available on the DIRECTV website,

13   and has been provided to customers for their review and acceptance along with their first bill.  *Id.* ¶

14   3.  More recently, DIRECTV now sends each customer the Customer Agreement with the letter

15   confirming each customer's initial order.  *Id.*  The Customer Agreement informs customers in bold,

16   capital letters in the very first paragraph on its first page that they may either reject its terms by

17   immediately cancelling service, or accept its terms by continuing to receive service:

18   　　　　**THIS DOCUMENT DESCRIBES THE TERMS AND CONDITIONS OF
        YOUR RECEIPT AND PAYMENT OF DIRECTV® SERVICE AND IS
        SUBJECT TO ARBITRATION (SECTION 9). IF YOU DO NOT ACCEPT
        THESE TERMS, PLEASE NOTIFY US IMMEDIATELY AND WE WILL
        CANCEL YOUR SERVICE. IF YOU INSTEAD DECIDE TO RECEIVE OUR
        SERVICE, IT WILL MEAN THAT YOU ACCEPT THESE TERMS AND
        THEY WILL BE LEGALLY BINDING.**

19

20

21   *Id.,* Exs. C (2006 Agreement) and H (2010 Agreement), Intro.  From time to time, DIRECTV

22   updates the Customer Agreement and mails the updated agreement to its customers, who can then

23   accept or reject the updated terms in the same manner described above.  *Id.* ¶ 4.

24   　　　Plaintiff Leslie Golba began subscribing to DIRECTV on approximately July 22, 2003.  *Id.* ¶

25   12.  Golba received her DIRECTV services in California.  *Id.*  DIRECTV mailed Golba her initial

26   Customer Agreement along with her first billing statement on July 23, 2003.  *Id.*  That Customer

27

28   [1] The McCarthy Declaration is submitted in support of DIRECTV's Motion to Compel Arbitration.

1

Agreement provided that she would accept its terms by continuing to receive, and not canceling, DIRECTV's services. *See id.*, Ex. A (2001 Agreement), Intro.  The Customer Agreement further provided that it could be replaced by updated Agreements, and that Golba would accept the updated terms in the same manner as her initial Agreement—by continuing to accept DIRECTV services.  *Id.* § 4.  After receiving the Customer Agreement in 2003, and after receiving updated Agreements in October 2004 and May 2006, Golba did not dispute any of their terms or conditions and did not immediately cancel her DIRECTV services.  *Id.* ¶¶ 12-13.  Golba ultimately canceled her service on July 25, 2006, at which time she was subject to the May 2006 Agreement.  *Id.* ¶ 13.

Robert Hodsdon, who received his DIRECTV service in Florida, also received his initial Customer Agreement with his first billing statement, and received updated agreements from time to time, as well as each time he re-subscribed to DIRECTV service.  *See id.* ¶¶ 18-21.  Each Customer Agreement Hodsdon received provided that he would accept its terms by continuing to receive, and not canceling, DIRECTV's services, and that he would accept the updated terms of any subsequent Agreements in the same manner.  *Id.* Exs. C, F-H, Intro.  There is no record of Hodsdon disputing any of the Customer Agreement's terms or conditions or canceling his DIRECTV service because of them.  *Id.* ¶¶ 19-21.  Hodsdon canceled his service on March 15, 2008, and then again (after opening a new account) on February 10, 2011, at which time he was subject to the 2010 Agreement.  *Id.* ¶ 21.

Each of Golba's and Hodsdon's Customer Agreements contained an arbitration provision. *Id.* Exs. A & F, § 8; Exs. B, C, G & H, § 9.  The front page of their applicable Customer Agreements directed them to Section 9 to find the arbitration provision.  *Id.*, Exs. C (2006 Agreement for Golba) and H (2010 Agreement for Hodsdon), Intro ("**IS SUBJECT TO ARBITRATION (SECTION 9)**").  Section 9 is entitled "**RESOLVING DISPUTES**," in bold, capitalized letters, set off from the surrounding text, and states that all disputes are subject to binding arbitration:

> In order to expedite and control the cost of disputes, you and we agree that any legal or equitable claim relating to this Agreement, any addendum, or your Service (referred to as a 'Claim') will be resolved as follows: . . .

> [I]f we cannot resolve a Claim informally, any Claim either of us asserts will be resolved only by binding arbitration.  The arbitration will be conducted under the rules of JAMS that are in effect at the time the arbitration is initiated . . . and under the rules set forth in this Agreement.

1  *Id.*, Exs. C & H, § 9.  The arbitration provision also explains the meaning of the agreement to

2  arbitrate (again in bolded, capital letters):  "**ARBITRATION MEANS THAT YOU WAIVE**

3  **YOUR RIGHT TO A JURY TRIAL.**"  *Id.*  DIRECTV pays all arbitration costs, with the possible

4  exception of a filing fee (a maximum of $125, and not to exceed the court filing fee in Plaintiffs'

5  home states), which DIRECTV also routinely pays.  *Id.* § 9(b).  Plaintiffs are entitled to recover "any

6  and all remedies" in arbitration as they could in court, including attorneys' fees.  *Id.*  The arbitration

7  hearings take place in Plaintiffs' hometowns under the laws of the states where they received

8  service.  *Id.* §§ 9(b), 10(b).  The arbitration provisions are governed by the FAA.  *Id.* § 10(b).

9  **II.    PLAINTIFFS ALSO RECEIVED THE DIRECTV PRIVACY POLICY, WHICH**
   **CONFIRMED THAT PRIVACY DISPUTES MUST BE ARBITRATED.**

10        DIRECTV customers also receive the DIRECTV Privacy Policy, which is updated from time

11  to time, and which explains DIRECTV's practices with respect to the collection, use, disclosure, and

12  retention of personally identifiable information.  *Id.* ¶ 9.  Like the Customer Agreement, customers

13  accept the Privacy Policy by receiving DIRECTV service.  *E.g.*, Ex. E, Intro ("Your use or receipt of

14  DIRECTV® products or services (including our Web sites) constitutes acceptance of this Policy.").

15        When the Satellite Home Viewer Extension and Reauthorization Act ("SHVERA") notice

16  requirement became effective, DIRECTV mailed Golba her first Privacy Policy in 2005.  *Id.* ¶ 14,

17  Ex. D; *see also* Pub. L. No. 108-447, 118 Stat. 3425-26 (amending 47 U.S.C. § 338 to include

18  subscriber privacy rights).  The next year, Golba received an updated Privacy Policy with her May

19  2006 billing statement.  McCarthy Decl. ¶ 15, Ex. E.  After receiving the Privacy Policy in 2005 and

20  2006, Golba continued to use DIRECTV services.  *Id.* ¶¶ 14-15.

21        DIRECTV mailed the Privacy Policy to Hodsdon when he began subscribing to DIRECTV

22  in 2006, and again when he re-subscribed in 2010.  *Id.* ¶¶ 22-24, Exs. E, I.  Hodsdon also received

23  an additional copy of the 2006 Privacy Policy as part of DIRECTV's annual mailing in 2007.  *Id.* ¶

24  23.  After receiving the Privacy Policy in 2006, 2007, and 2010, Hodsdon continued his DIRECTV

25  service. *Id.* ¶¶ 22-24.

26        The DIRECTV Privacy Policy states that any disputes, including claims under the

27  Communications Act, 47 U.S.C. § 338(i) (which is alleged here), are subject to the arbitration

28

DIRECTV'S MOTION TO COMPEL ARBITRATION,                                    Case No. CV-12-2827-JSW
OR IN THE ALTERNATIVE, TO DISMISS PLAINTIFFS' COMPLAINT

agreement found in the Customer Agreement:

> The Communications Act, 47 U.S.C. § 338(i), governs our practices concerning the collection and disclosure of personally identifiable information about you. If you believe we have violated the provisions of the Communications Act, you may bring an action for damages, reasonable attorneys' fees, and costs. The DIRECTV Customer Agreement contains our agreement that claims such as these will be resolved by binding arbitration. You received a copy of the Customer Agreement in your first bill. It is also available at directv.com.

*See, e.g., id.,* Ex. I, § IX.

## ARGUMENT

### I. THE COURT SHOULD COMPEL ARBITRATION IN ACCORDANCE WITH THE PARTIES' ARBITRATION AGREEMENTS.

Because the FAA reflects a strong policy favoring arbitration of disputes, arbitration provisions governed by the FAA are to be liberally enforced.  *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  Section 3 of the FAA provides that, when a plaintiff sues "upon any issue referable to arbitration under an agreement in writing for such arbitration," the court "shall" stay the action until arbitration is completed in accordance with the terms of the parties' agreement.  *See* 9 U.S.C. § 3.[2]  Section 4 of the FAA, in turn, empowers the Court to compel arbitration according to the parties' agreement.  *See* 9 U.S.C. § 4.

A party may avoid arbitration only by proving a defense generally applicable to all contracts. *See* 9 U.S.C. § 2 (arbitration provisions must be enforced "save upon such grounds as exist at law or in equity for the revocation of any contract").  The Supreme Court recently reaffirmed this rule. *Concepcion*, 131 S. Ct. at 1746 (arbitration agreements may be invalidated only "by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue"); *see also In re Cal. Title Ins. Antitrust Litig.*, 2011 WL 2566449, at *2 (N.D. Cal. June 27, 2011) (White, J.) (enforcing arbitration agreement in light of *Concepcion*).

As explained below, the parties' agreements here contain arbitration provisions that

---

[2] Although Section 3 refers to staying proceedings, dismissal of the action is proper when all issues raised in the complaint must be submitted to arbitration. *See Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988) (upholding dismissal where remaining claims subject to arbitration).

DIRECTV'S MOTION TO COMPEL ARBITRATION,
OR IN THE ALTERNATIVE, TO DISMISS PLAINTIFFS' COMPLAINT

Case No. CV-12-2827-JSW

encompass this dispute and, in accordance with the FAA, they should be enforced.[3]

### A. The Customer Agreement Governs The Relationships Between DIRECTV And Plaintiffs And Requires Arbitration Of Disputes.

As explained above, Plaintiffs accepted their initial and updated Customer Agreements by continuing to receive DIRECTV service, instead of rejecting the initial contract or any updated terms by immediately canceling service.  McCarthy Decl. ¶ 13 (Golba most recently accepted 2006 Customer Agreement); ¶ 21 (Hodsdon most recently accepted 2010 Customer Agreement); Exs. C and H, Intro.  Plaintiffs therefore manifested their acceptance of the Customer Agreement and its terms, including the arbitration provision.  *See Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 593-95 (1991) (enforcing terms on back of cruise ship ticket after passenger chose to board cruise after receiving ticket); *Rivera v. AT&T Corp.*, 420 F. Supp. 2d 1312, 1320-21, n.13 (S.D. Fla. 2006) (enforcing customer agreement and arbitration provision under Florida law where customer accepted services after receiving agreement); *Craig v. Brown & Root, Inc.,* 84 Cal. App. 4th 416, 420-21 (2000) (enforcing arbitration agreement where employee continued to work for employer after receiving agreement in mail).

Indeed, courts in California and around the country have held that DIRECTV customers who continued to accept service upon receiving the Customer Agreement, in exactly the same way Plaintiffs did, became parties to the Customer Agreement and the arbitration provision.  *See, e.g., Murphy v. DIRECTV, Inc.*, 2011 WL 3319574, at *2 (C.D. Cal. Aug. 2, 2011) (confirming that DIRECTV's accept-or-return practice is a valid method of contract formation and compelling arbitration); *Stachurski* v. *DirecTV, Inc.,* 642 F. Supp. 2d 758, 766 (N.D. Ohio 2009) (same); *Truitt v. DirecTV, Inc.,* 2008 WL 5054570, at *3 (E.D. La. Nov. 21, 2008) (same); *Bischoff v. DirecTV, Inc.,* 180 F. Supp. 2d 1097, 1103-06 (C.D. Cal. 2002) (same).

---

[3] This is not the first time Plaintiff Golba, represented by the same counsel, has disregarded an arbitration agreement and filed a putative class action relating to personally identifiable information. A Central District of California court recently compelled Golba to individually arbitrate a similar dispute with Citigroup.  *See Golba v. Citigroup, Inc.*, 8:11-cv-01003, Dkt. No. 55 (C.D. Cal. March 30, 2012).  Golba and her counsel have filed numerous other putative class actions trying to challenge companies' practices with regard to personally identifiable information.  *See, e.g., Golba v. The Reader's Digest Assoc., Inc.*, 8:12-cv-00361 (C.D. Cal. March 8, 2012)*; Golba et al. v. White House Black Market, Inc.*, 3:11-cv-02774 (S.D. Cal. Nov. 29, 2011); *Golba v. DSW, Inc.*, 3:11-cv-02632 (S.D. Cal. Nov. 10, 2011); *Golba v. DSW, Inc.*, 2:11-cv-06615 (C.D. Cal. Aug. 11, 2011).

DIRECTV'S MOTION TO COMPEL ARBITRATION,                                                  Case No. CV-12-2827-JSW
OR IN THE ALTERNATIVE, TO DISMISS PLAINTIFFS' COMPLAINT

**B.     This Dispute Falls Within The Arbitration Provisions' Broad Scope.**

The next inquiry is whether the parties' dispute falls within the scope of their arbitration agreements.  Given the strong federal policy favoring arbitration, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone,* 460 U.S. at 24-25. The arbitration provisions here extend to "any legal or equitable claim relating to this Agreement, any addendum, or [the customer's] Service."  McCarthy Decl., Exs. C & H, § 9. When parties use such expansive phrasing, "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail."  *AT&T Techs., Inc.* v. *Commc'ns Workers of Am.,* 475 U.S. 643, 650 (1986) (internal quote/cite omitted).  Plaintiffs' claims here "relat[e] to" their Customer Agreements, the Privacy Policy, **and** their DIRECTV service.  Plaintiffs allege that DIRECTV violated 47 U.S.C. § 338(i), Cal. Civ. Code § 1798.80, *et seq.*, and Cal. Penal Code § 637.5, and breached an implied contract when it handled their personally identifiable information.  *See* Compl. ¶¶ 55-106.  The Customer Agreement states under the heading **"PERSONAL DATA"** that "[t]he use and disclosure of this Personal Data is governed by our Privacy Policy, and to the extent not inconsistent with the Privacy Policy, by this Agreement," and incorporates the Privacy Policy.  McCarthy Decl., Exs. C & H, § 6.   The incorporated Privacy Policy, in turn, sets forth DIRECTV's practices for collecting, using, disclosing and retaining personally identifiable information—which practices Plaintiffs are challenging.  *See id*. Exs. E & I.  And Plaintiffs' claims relate to their "service" because they allege that they gave DIRECTV their information "in order to receive cable services."  Compl. ¶¶ 36, 40.

Plaintiffs' claims therefore fall within the scope of the parties' arbitration agreements.

**C.     The Parties' Arbitration Agreements Are Valid And Enforceable.**

Because DIRECTV has shown that the parties have arbitration agreements that cover the parties' dispute here, this Court must compel arbitration unless Plaintiffs prove that their FAA-governed agreements are unenforceable due to a state law contract defense that applies generally to all contracts.  *See* 9 U.S.C. § 2; *Concepcion,* 131 S. Ct. at 1745-46; *Cal. Title Ins. Antitrust Litig.*, 2011 WL 2566449, at *2.  In addition to confirming that the FAA governs the parties' arbitration agreements, the Customer Agreement's choice-of-law provision also states that "the interpretation and enforcement of this Agreement shall be governed by . . . the laws of the state and local area

6

1   where Service is provided to you." McCarthy Decl., Exs. C, H § 10(b). Because DIRECTV

2   provided service to Golba in California (*id.* ¶ 12) and to Hodsdon in Florida (*id.* ¶ 17), to avoid

3   arbitration, Plaintiffs must prove that their arbitration agreements are unenforceable due to a

4   generally applicable contract defense under California and Florida law, respectively.

5          Plaintiffs, however, have no viable argument against enforcement of their arbitration

6   agreements, particularly in light of the Supreme Court's decision in *Concepcion*. *Concepion* held

7   that the FAA preempts California's *Discover Bank*-rule, which invalidated arbitration agreements

8   containing class waivers like the one found in the parties' Customer Agreements. *See Concepcion*,

9   131 S. Ct. at 1753. Since *Concepcion*, two District Courts applying California law have enforced the

10  same arbitration agreement at issue here. *See In re DirecTV Early Cancellation Fee Mktg. & Sales*

11  *Practices Litig.*, 810 F. Supp. 2d 1060, 1068-69 (C.D. Cal. 2011), *disapproved in part by Kilgore v.*

12  *KeyBank, Nat'l Ass'n*, 673 F.3d 947, 961-63 (9th Cir. 2012);[4] *Murphy*, 2011 WL 3319574, at *3.

13  And courts applying Florida law have also enforced arbitration agreements containing class waivers

14  in the wake of *Concepcion*. *See Cruz v. Cingular Wireless LLC*, 648 F.3d 1205, 1215 (11th Cir.

15  2011); *Day v. Persels & Assocs.*, 2011 WL 1770300, at *5 (M.D. Fla. May 9, 2011).

16         With the class waiver issue resolved, Plaintiffs cannot prove that their arbitration agreements

17  are *both* procedurally and substantively unconscionable, as California and Florida require. *See*

18  *Kilgore*, 673 F.3d at 963 (requiring procedural and substantive unconscionability); *Gainesville*

19  *Health Care Ctr., Inc. v. Weston*, 857 So. 2d 278, 284 (Fla. Dist. Ct. App. 2003) (same). As

20  explained above, the terms under which the parties agreed to arbitrate are not substantively

21  unconscionable, and in fact benefit Plaintiffs by shifting costs to DIRECTV, by making every

22  remedy they could seek in court available in arbitration, and by ensuring that the arbitration takes

23  place in Plaintiffs' hometowns under the laws of the states where they received service. *See supra*,

24  _____

25  [4] Although the *In re DirecTV* court compelled arbitration of all of plaintiffs' damages claims, it
    denied arbitration of certain injunctive relief claims. The Ninth Circuit has since stated that the
26  court's ruling exempting the injunctive relief claims was incorrect. *See Kilgore*, 673 F.3d at 961-63
    (disapproving *In Re DirecTV*, 810 F. Supp. 2d at 1073). Post-*Kilgore*, the same *In re DIRECTV*
27  court reversed course from its *In re DIRECTV* decision (currently on appeal) and compelled
    arbitration of all claims in one of Golba's other personal information cases. *See Golba v. Citigroup,*
28  *Inc.*, 8:11-cv-01003, Dkt. No. 55 at 9-10 (C.D. Cal. March 30, 2012).

DIRECTV'S MOTION TO COMPEL ARBITRATION,                    Case No. CV-12-2827-JSW
OR IN THE ALTERNATIVE, TO DISMISS PLAINTIFFS' COMPLAINT

Background, § I.  Nor are the arbitration agreements procedurally unconscionable.  The Customer Agreements conspicuously disclosed the arbitration provision, and gave Plaintiffs the opportunity to select another programming provider rather than accept the Agreement and arbitration provision.  *Id*.

Because the parties' Customer Agreements contain valid arbitration agreements that cover Plaintiffs' claims, this Court must compel arbitration of Plaintiffs' dispute.

## II.  IF THE COURT DECLINES TO COMPEL ARBITRATION, IT SHOULD DISMISS THE COMPLAINT IN ITS ENTIRETY.

### A.  The Court Should Dismiss The Complaint Pursuant To Rule 12(b)(1) Because Plaintiffs Fail To Allege The Injury-In-Fact Necessary For Article III Standing.

Article III of the Constitution requires Plaintiffs to demonstrate that they have standing to sue in federal court.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  Plaintiffs must allege:  (1) injury-in-fact; (2) causation; and (3) redressability.  *See id*. at 560-61.  An injury-in-fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."  *Id*. at 560.  Challenges to Article III standing are properly raised in a motion to dismiss.  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

Here, Plaintiffs do not allege that their personally identifiable information was stolen from them or collected without their consent; or that it was shared with third parties or misused in any way; or that it was destroyed improperly or mishandled so that they were made vulnerable to identity theft.  They do not even allege that their information was collected or maintained for some improper purpose.  Rather, Plaintiffs only allege that DIRECTV maintained their information, and that they have been "injured" and deprived of:  (a) their ability to make informed decisions with respect to their privacy; (b) the full value of the services that they bargained and paid for; and (c) the opportunity to control their personal property for their own financial gain.  Compl. ¶¶ 60-62, 70-72, 81-83, 96, 103-105.  These abstract and conjectural allegations fall far short of the injury-in-fact mark.  *See e.g.*, *Low v. LinkedIn Corp.*, 2011 WL 5509848, at *4 (N.D. Cal. Nov. 11, 2011) ("*LinkedIn I*") ("Plaintiff's allegation that his sensitive [personally identifiable] information *may* be transmitted via his browser history is too theoretical to support injury in-fact for the purposes of Article III standing."); *LaCourt v. Specific Media*, 2011 WL 1661532, at *5 (C.D. Cal. April 28, 2011) (no actual or imminent injury in fact because the plaintiffs "do not explain how they were

8

'deprived' of the economic value of their personal information simply because their unspecified personal information was purportedly collected").

And although Plaintiffs allege that their personal information has an economic benefit, (*see* Compl. ¶¶ 61-62, 71-72, 82-83, 104-05), courts consistently find that personal information itself has no independent economic value.  *See LinkedIn I* at *4-5; *Specific Media*, 2011 WL 1661532, at *4-5; *In re iPhone Application Litig.*, 2011 WL 4403963, at *4-6 (N.D. Cal. Sept. 20, 2011) ("*iPhone I*"); *In re Facebook Privacy Litig.*, 2011 WL 6176208, at *5 (N.D. Cal. Nov. 22, 2011); *In re Zynga Privacy Litig.*, 2011 WL 7479170, at *3 (N.D. Cal. June 15, 2011).

Nor can Plaintiffs simply rely on DIRECTV's alleged statutory violations to overcome their Article III burden.  *See* Compl. ¶¶ 60, 70, 81, 103 (suggesting that a violation alone constitutes injury).  Recognizing they have no actual injury, Plaintiffs will likely try to rely on *Edwards v. First American Corp.*, 610 F.3d 514 (9th Cir. 2010), and argue that a statutory violation in and of itself is sufficient to establish Article III standing in a case like this where there is zero harm.  But *Edwards* does not support such a perverse result.  The *Edwards* plaintiff alleged that the referral of her title insurance to First American violated the Real Estate Settlement Procedures Act.  The *Edwards* court focused on the text and legislative history of that statute, and found that because the plaintiffs were actually "charged" a fee by First American, and because the legislative history showed that the referral could result in harm beyond the increase in the cost of settlement services, there was injury sufficient to establish Article III standing.  *Id*. at 517.

Here, by contrast, Plaintiffs do not allege that they were charged anything, or that the statutes or their legislative histories identify any harms similar to those in *Edwards*.  To the extent any courts since *Edwards* have found that a statutory violation confers Article III standing, they have done so only after a close analysis of the wrong prohibited by the statute and a determination of "whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief."  *Id*. (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975)).

In addition, none of the case that followed *Edwards* involved the statutes at issue here, let alone the innocuous retention of information alleged here.  *Cf. In re iPhone Application Litig.*, 844

9

1  F. Supp. 2d 1040, 1055 (N.D. Cal. 2012) ("*iPhone II*") (alleging the interception and misuse of

2  information in violation of the Wiretap Act and improper accessing of users' geographic locations in

3  violation of Stored Communications Act); *Low v. LinkedIn Corp.*, 2012 WL 2873847, at *5 (N.D.

4  Cal. July 12, 2012) ("*LinkedIn II*") (alleging improper disclosure of information to third party

5  marketing companies in violation of Stored Communications Act); *In re Facebook Privacy Litig.*,

6  791 F. Supp. 2d 705, 712 (N.D. Cal. 2011) (alleging interception and misuse of information in

7  violation of Wiretap Act).  Moreover, if courts are required to look at the language and history of the

8  particular statute at issue to determine whether any given claim should be understood as granting

9  plaintiffs a right to judicial relief under Article III (*see Edwards*, 610 F.3d at 517; *Warth*, 422 U.S. at

10 500), then there are necessarily certain statutory violations that do not confer Article III standing

11 without some additional allegation of a concrete injury.  Unlike in *iPhone II* and *LinkedIn II*,

12 Plaintiffs do not allege that DIRECTV misused or divulged their personally identifiable information.

13 Indeed, Plaintiffs do not allege ***any*** facts that suggest they were impacted ***at all*** by DIRECTV's

14 alleged conduct.  Plus, as explained below in Section II.B, Plaintiffs' allegations do not state claims

15 for any statutory violations, and thus cannot form a basis for Article III standing in any event.

16       For all of these reasons, Plaintiffs' Complaint should be dismissed in its entirety for failure to

17 allege a cognizable injury-in-fact sufficient to establish Article III standing.

18       **B.    The Court Should Dismiss The Complaint Pursuant To Rule 12(b)(6) Because Plaintiffs Fail To State A Claim For Which Relief May Be Granted.**

19

20       Federal Rule of Civil Procedure 12(b)(6) was designed to eliminate deficient claims before

21 defendants incur the burden and cost of defending them, particularly in a putative class action.  *See*

22 *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).  Dismissal is warranted when the factual

23 allegations do not raise the "right to relief above the speculative level."  *Id.* at 555.  While a court, in

24 deciding a Rule 12(b)(6) motion, must accept as true well-pled factual allegations, it should not

25 "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or

    unreasonable inferences."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

26

27       **1.    Plaintiffs do not state a claim under the Satellite Home Viewer Extension and Reauthorization Act.**

28       Counts I and II of Plaintiffs' Complaint allege violations of two provisions of SHVERA.

10

1   Compl. ¶¶ 55-75.  SHVERA § 338(i)(6) requires that a carrier destroy personally identifiable

2   information "if the information is no longer necessary for the purpose for which it was collected and

3   there are no pending requests or orders for access to such information [by the subscriber] or pursuant

4   to a court order."  47 U.S.C. § 338(i)(6).  SHVERA § 338(i)(1) requires that a carrier give notice to

5   its existing subscribers "[a]t the time of entering into an agreement to provide any satellite service"

6   and "at least once a year thereafter."  *Id*. § 338(i)(1); *see also* 17 U.S.C. § 122(j)(6).

7           First, in addition to Article III standing, Plaintiffs must have statutory standing to sue under

8   Section 338(i)(7) of SHVERA, which provides that "any person aggrieved by any act of a satellite

9   carrier in violation of this section" may bring an action.  Because statutory standing under Section

10  338(i)(7) has not been directly addressed by any court, *Sterk v. Redbox Automated Retail, LLC*, 672

11  F.3d 535 (7th Cir. 2012), is instructive.  In *Sterk*, the plaintiffs sued under the Video Privacy

12  Protection Act, 18 U.S.C. § 2710, *et seq.* ("VPPA").  Although the statutory requirements regarding

13  the retention of customer information differ, the VPPA standing requirement is quite similar to

14  SHVERA's.  *Compare* VPPA § 2710(c) ("any person aggrieved") *with* SHVERA § 338(i)(7) ("any

15  person aggrieved").  Redbox argued on interlocutory appeal that the plaintiffs had no standing to

16  seek damages under the VPPA.  The Seventh Circuit agreed that plaintiffs suffer no actual injury

17  until their personal identifiable information is disclosed.  *Sterk*, 672 F.3d at 538 ("How could there

18  be injury, unless the information, not having been destroyed, were disclosed?").  If the information

19  "remained secreted in the video service provider's files until it was destroyed, there would be no

20  injury."  *Id.* at 538-39 (distinguishing cases involving disclosure from cases where information was

21  only retained); *see also Doe v. Chao*, 540 U.S. 614, 620 (2004) (finding no standing under the

22  Privacy Act even after plaintiffs' personally identifiable information was disclosed because the

23  statute did not allow for damages without actual injury).  Because the Complaint does not allege that

24  Plaintiffs' personally identifiable information was disclosed or otherwise misappropriated or

25  misused, the Court should dismiss both Counts I and II for lack of statutory standing.

26          Second, even assuming Plaintiffs had Article III *and* statutory standing, they still have not

27  stated valid SHVERA claims.  Plaintiffs' 338(i)(6) claim fails because DIRECTV has the right to

28  preserve Plaintiffs' personally identifiable information if the information is still "necessary for the

11

DIRECTV'S MOTION TO COMPEL ARBITRATION,                                    Case No. CV-12-2827-JSW
OR IN THE ALTERNATIVE, TO DISMISS PLAINTIFFS' COMPLAINT

1    purpose for which it was collected." 47 U.S.C. § 338(i)(6).  Plaintiffs have not alleged any facts that

2    DIRECTV's retention of Plaintiffs' information is not still necessary for the purpose for which it

3    was collected.  Indeed, as a matter of law, DIRECTV has multiple, legitimate business reasons for

4    retaining Plaintiffs' personally identifiable information, including, for example, litigation holds, tax

5    preparation, and accounting.  As for litigation holds, DIRECTV has several putative class actions

6    pending in trial or appellate courts around the country, including actions proposing nationwide

7    classes with class periods that begin before either Plaintiff became a subscriber.  *See* Request for

8    Judicial Notice (filed concurrently) ("RJN"), § I.  Those actions require DIRECTV to maintain

9    customer information.  *See, e.g., In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1070

10   (N.D. Cal. 2006) ("Once a party reasonably anticipates litigation, it must suspend its routine

11   document retention/destruction policy and put in place a 'litigation hold'") (quoting *Zubulake v. UBS*

12   *Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003)); *cf. Warner v. Am. Cablevision of Kansas*

13   *City, Inc.*, 699 F. Supp. 851, 858 (D. Kan. 1988) (finding no violation of 47 U.S.C. § 551(e) because

14   accounting and tax preparation were legitimate purposes for maintaining plaintiff's personally

15   identifiable information).

16          Plaintiffs cannot and do not allege that DIRECTV lacked any legitimate business reason for

17   maintaining their information.  *See Crain v. Credit Protection Ass'n*, 2010 WL 1223127, at *3 (N.D.

18   Tex. Mar. 2, 2010) (dismissing complaint under *Twombly* because "Plaintiff has alleged no facts to

19   support a claim that [Defendant] lacked a legitimate business need" for obtaining plaintiff's credit

20   report), *approved by* 2010 WL 1233517 (N.D. Tex. Mar. 29, 3010).  This Court should therefore

21   dismiss Count I with prejudice.  *See Swartz v. KPMG LLP*, 476 F.3d 756, 760-61 (9th Cir. 2007)

22   (court may dismiss with prejudice when "no conceivable set of facts [] could justify relief").

23          As for Plaintiffs' 338(i)(1) claim, that section only requires that DIRECTV provide certain

24   notices to its "subscribers."  The statute defines "subscriber" in the present, not past, tense, as "a

25   person or entity that *receives* a secondary transmission service from a satellite carrier and *pays* a fee

26   for the service, directly or indirectly, to the satellite carrier or to a distributor."  47 U.S.C. §

27   338(k)(9), incorporating 17 U.S.C. § 122(j)(6) (emphases added).  After they terminated service,

28   Plaintiffs were no longer "subscribers" within the meaning of the statute.  Compl. ¶¶ 37, 41.  And

DIRECTV'S MOTION TO COMPEL ARBITRATION,                                    Case No. CV-12-2827-JSW
OR IN THE ALTERNATIVE, TO DISMISS PLAINTIFFS' COMPLAINT

1    Plaintiffs allege only that DIRECTV did not supply them with Section 338(i)(1) notices "[a]fter the

2    termination of [their] services."  Compl. ¶¶ 67-68.  As a matter of law, DIRECTV had no obligation

3    to.  *See* 47 U.S.C. § 338(k)(9); 17 U.S.C. § 122(j)(6).  Count II should be dismissed with prejudice.

4    **2.      Plaintiffs do not state a claim under the California Customer Records Act.**

5    As with SHVERA, Plaintiffs need statutory standing to assert a claim under the California

6    Customer Records Act ("CCRA"), which provides that "[a]ny customer *injured* by a violation of this

7    title may institute a civil action to recover damages."  Cal. Civ. Code § 1798.84(b) (emphasis

8    added).  As discussed in Sections II.A and II.B.1, Plaintiffs have not alleged any cognizable injury.

9    *Boorstein v. Men's Journal LLC*, 2012 WL 2152815 (C.D. Cal. June 14, 2012), is instructive here.

10   The plaintiff alleged that Men's Journal violated the CCRA by not providing contact information or

11   a description of California consumers' rights about opting in or out of allowing their information to

12   be shared with third parties.  *Id.* at *2; Cal. Civ. Code § 1798.83(a-b).  But the plaintiff did not allege

13   that he suffered any harm from these alleged inactions.  The court held that "the [CCRA] does not

14   allow a cause of action based solely upon a failure to comply with the statute.  Rather, § 1798.84(b)

15   expressly requires an *injury* resulting from a violation.  Thus, a violation of the statute, without

16   more, is insufficient."  *Boorstein*, 2012 WL 2152815, at *3 (emphasis added).  The court dismissed

17   the plaintiff's complaint.  This Court should dismiss Plaintiffs' CCRA claims too.

18   Even if Plaintiffs could overcome their lack of standing, it is clear from the only on-point

19   case that the CCRA was intended to prescribe a method by which records are to be disposed of, and

20   has nothing to do with whether and for how long documents may be retained.  The CCRA states:

21   
22       A business shall take all reasonable steps to dispose, or arrange for the disposal, of
         customer records within its custody or control containing personal information when
23       the records are no longer to be retained by the business by (a) shredding, (b) erasing,
         or (c) otherwise modifying the personal information in those records to make it
24       unreadable or undecipherable through any means.

25   Cal. Civ. Code § 1798.81.  In *Doe 1 v. AOL LLC*, 719 F. Supp. 2d 1102 (N.D. Cal. 2010), the

26   plaintiff cited this language and accused the defendant of "releasing member information without

27   'appropriate protections or modifications to protect personal information contained in the database.'"

28   *Id.* at 1114.  The court reviewed the statute and dismissed the claim, emphasizing that the statute

DIRECTV'S MOTION TO COMPEL ARBITRATION,                                    Case No. CV-12-2827-JSW
OR IN THE ALTERNATIVE, TO DISMISS PLAINTIFFS' COMPLAINT

relates only to the process by which information is disposed of when the business no longer needs it:

> [CCRA] plainly is inapplicable here . . . the legislative history makes clear, the [CCRA] was enacted to regulate 'the disposal by businesses of records containing the personal information of customers' in order to prevent identity theft. . . . The statute was not intended to encompass scenarios, such as the one presented, where the disclosure of personal information did not result in the course of the business's disposal of customer records.

*Id*. Here, Plaintiffs do not allege that DIRECTV *improperly* disposed of their personal information; they allege that DIRECTV did not dispose of their personal information *at all*. Compl. ¶¶ 58-61. The CCRA does not apply here, and this Court should dismiss Count III with prejudice.

### 3.   Plaintiffs do not state a claim for breach of an implied contract because they agreed to an express contract addressing the same subject matter.

Not only does Plaintiffs' lack of injury also doom their contract claim (*see In re Facebook*, 2011 WL 6176208, at *5 (requiring "appreciable and actual damage"); *Ruiz v. Gap, Inc.*, 622 F. Supp. 2d 908, 917 (N.D. Cal. 2009)), but under California law, an implied contract claim cannot exist where an express contract addresses the same subject matter.[5] *See Rogers v. Am. President Lines, Ltd.*, 291 F.2d 740, 742 (9th Cir. 1961); *Wal-Noon Corp. v. Hill*, 45 Cal. App. 3d 605, 613 (1975). Plaintiffs allege that DIRECTV breached an implied contract requiring it to (a) "safeguard" Plaintiffs' personally identifiable information through "all reasonable measures," and (b) timely destroy Plaintiffs' personally identifiable information. Compl. ¶¶ 88-93. But these safeguarding and retention issues are expressly covered in the Privacy Policy. Although Plaintiffs do not attach the Privacy Policy to their Complaint, they do quote from it. *Id*. ¶ 22 ("DirecTV's online Privacy Policy provides as follows . . ."). In such circumstances, "the court may consider a document not attached to the complaint if the complaint specifically refers to it and its authenticity is not questioned." *Busey v. P.W. Supermarkets, Inc.*, 368 F. Supp. 2d 1045, 1049 (N.D. Cal. 2005). This Court should do so here with the Privacy Policy. *See* RJN.

The Privacy Policy expressly sets forth DIRECTV's practices for maintaining, retaining and safeguarding Plaintiffs' information. *See* RJN, Exs. 1-2, *e.g*. § V ("We maintain information about

---

[5] Plaintiffs also have not alleged facts sufficient to show that DIRECTV intended to enter into an implied contract. *Mitsui O.S.K. Lines, Ltd. v. Dynasea Corp.*, 72 Cal. App. 4th 208 (1999); *Peterson Dev. Co. v. Torrey Pines Bank*, 233 Cal. App. 3d 103 (1991) (both parties must intend the contract).

DIRECTV'S MOTION TO COMPEL ARBITRATION,                    Case No. CV-12-2827-JSW
OR IN THE ALTERNATIVE, TO DISMISS PLAINTIFFS' COMPLAINT

1   you for as long as we provide service to you, and longer for related business activities.  After

2   information is no longer necessary for our business purposes, we destroy the information unless

3   there is an outstanding request or order to preserve the information."); § VII ("We take reasonable

4   steps to protect Customer information by using security technologies and procedures that limit

5   access to our databases.  However, no system is completely secure or error-free.  We do not, and

6   cannot, guarantee the complete security of Customer information.").  Plaintiffs cannot seek to

7   modify or substitute these express terms with implied ones.  *See Wal-Noon*, 45 Cal. App. 3d at 613

8   ("[I]t would be inequitable to imply a different liability and to withdraw from one party benefits for

9   which he has bargained and to which he is entitled.").  This Court should dismiss Count IV with

10  prejudice.

11                  **4.      Plaintiffs do not state a claim under California Penal Code § 637.5**
                            **because DIRECTV retains Plaintiffs' personally identifiable information**
12                          **for legitimate business reasons.**

13          Plaintiffs also allege that DIRECTV violated California Penal Code § 637.5 by retaining

14  Plaintiffs' personally identifiable information after they terminated DIRECTV service.  Compl.

15  ¶101.  The statute reads:

16          Individual subscriber viewing responses or other individually identifiable information
            derived from subscribers may be retained and used by a satellite or cable television
17          corporation only to the extent reasonably necessary for billing purposes and internal
            business practices, and to monitor for unauthorized reception of services. A satellite
18          or cable television corporation may compile, maintain, and distribute a list containing
            the names and addresses of its subscribers if the list contains no other individually
19          identifiable information and if subscribers are afforded the right to elect not to be
            included on the list. However, a satellite or cable television corporation shall maintain
20          adequate safeguards to ensure the physical security and confidentiality of the
            subscriber information.

21
22  Cal. Penal Code § 637.5(b).  As with Count I, Plaintiffs' Penal Code claim fails because there is no

23  allegation that DIRECTV does not have reasonable, internal business practices that require

24  maintaining Plaintiffs' personally identifiable information.  *See supra*, § II.B.1.  Accordingly, this

25  Court should dismiss Count V with prejudice.

                                        **CONCLUSION**

26          For the foregoing reasons, the Court should grant DIRECTV's motion to compel arbitration

27  or, alternatively, dismiss the Complaint in its entirety.

28
                                                15
    DIRECTV'S MOTION TO COMPEL ARBITRATION,                          Case No. CV-12-2827-JSW
    OR IN THE ALTERNATIVE, TO DISMISS PLAINTIFFS' COMPLAINT

1   DATED:  August 10, 2012                    KIRKLAND & ELLIS LLP

2

3                                             s/Robyn E. Bladow
                                              Melissa D. Ingalls
4                                             Robyn E. Bladow
                                              Sierra Elizabeth
5                                             Kirkland & Ellis LLP
                                              333 South Hope Street
6                                             Los Angeles, CA  90071

7                                             *Attorneys for Defendant DIRECTV, LLC*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DIRECTV'S MOTION TO COMPEL ARBITRATION,                    Case No. CV-12-2827-JSW
OR IN THE ALTERNATIVE, TO DISMISS PLAINTIFFS' COMPLAINT

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on August 10, 2012, I electronically filed DIRECTV'S MOTION TO DISMISS OR STAY PROCEEDINGS PENDING ARBITRATION AND TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) and 12(b)(6) with the Clerk of the Court using the CM/ECF system, which will automatically send an e-mail notification of such filing to the attorneys of record who are registered CM/ECF users.

I further certify that some of the participants in the case are not registered CM/ECF users.  I have caused a copy of the foregoing document to be mailed by U.S. First Class Mail, postage prepaid to the following non-CM/ECF participant:

**Ari J. Scharg**
Edelson McGuire, LLC
350 North LaSalle Street
Suite 1300
Chicago, IL 60654

Executed on August 10, 2012, at Los Angeles, California.

Respectfully submitted,

s/Robyn E. Bladow

Melissa D. Ingalls
Robyn E. Bladow
Sierra Elizabeth
Kirkland & Ellis LLP
333 South Hope Street
Los Angeles, CA  90071

*Attorneys for Defendant DIRECTV, LLC*

DIRECTV'S MOTION TO COMPEL ARBITRATION,                    Case No. CV-12-2827-JSW
OR IN THE ALTERNATIVE, TO DISMISS PLAINTIFFS' COMPLAINT