1

2

3

4

5

6                       IN THE UNITED STATES DISTRICT COURT

7

8                       FOR THE NORTHERN DISTRICT OF CALIFORNIA

9  ROBERT HODSDON and LESLIE GOLBA,
   on behalf of themselves and all others similarly
10 situated,                                              No. C 12-02827 JSW

11              Plaintiffs,

12    v.                                                  **ORDER REGARDING MOTIONS**

13 DIRECTV, LLC,

14              Defendant.
   _____/

15

16        Now before the Court is the motion to compel arbitration and to stay proceedings

17 pending arbitration filed by Defendant DirecTV, LLC ("DirecTV").  Also before the Court is

18 the motion for leave to conduct arbitration-related discovery filed by Plaintiffs Robert Hodsdon

19 and Leslie Golba (collectively, "Plaintiffs").  The Court finds these matters suitable for

20 disposition without oral argument and VACATES the hearing set for December 14, 2012.  *See*

21 N.D. Cal. Civ. L. R. 7-1(b).  Having carefully reviewed the parties' papers and considered their

22 arguments and the relevant authority, the Court GRANTS DirecTV's motion and DENIES

23 Plaintiffs' motion.

24                                  **BACKGROUND**

25        Plaintiffs sued DirecTV on June 1, 2012, claiming that DirecTV had violated both the

26 Satellite Home Viewer Extension and Reauthorization Act ("SHVERA") and certain California

27 state laws.  (*See* Plaintiffs' Class Action Complaint ("Compl.") at ¶¶ 1-4.)  The suit is based

28 upon Plaintiffs' allegations, on behalf of themselves and their putative class of former DirecTV

*United States District Court*
For the Northern District of California

1    customers, that DirecTV had improperly maintained their personally identifiable information

2    after Plaintiffs had terminated their service with DirecTV.  (*Id.*)

3           DirecTV has moved to compel arbitration and to stay proceedings pending arbitration.

4    Plaintiffs oppose DirecTV's motion, alleging that arbitration is improper in this case and also

5    that the arbitration provision in their contract with DirecTV is unconscionable and thus not

6    enforceable.  To support their unconscionability argument, Plaintiffs move for arbitration-

7    related discovery.  The Court shall address additional facts as necessary to its analysis in the

8    remainder of this Order.

9                                           **ANALYSIS**

10   **A.      Legal Standards Applicable to Motions to Compel Arbitration.**

11          Pursuant to the Federal Arbitration Act ("FAA"), arbitration agreements "shall be valid,

12   irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the

13   revocation of any contract."  9 U.S.C. § 2.  Once the Court has determined that an arbitration

14   agreement involves a transaction involving interstate commerce, thereby falling under the FAA,

15   the Court's only role is to determine whether a valid arbitration agreement exists and whether

16   the scope of the parties' dispute falls within that agreement.  9 U.S.C. § 4; *Chiron Corp. v.*

17   *Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000); *United Computer Systems v.*

18   *AT&T Corp.*, 298 F.3d 756, 766 (9th Cir. 2002) ("Under § 4 of the FAA, a district court must

19   issue an order compelling arbitration if the following two-pronged test is satisfied: (1) a valid

20   agreement to arbitrate exists; and (2) that agreement encompasses the dispute at issue.").

21          The FAA represents the "liberal federal policy favoring arbitration agreements" and

22   "any doubts concerning the scope of arbitrable issues should be resolved in favor of

23   arbitration."  *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25

24   (1983).  Under the FAA, "once [the Court] is satisfied that an agreement for arbitration has been

25   made and has not been honored," and the dispute falls within the scope of that agreement, the

26   Court must order arbitration.  *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395,

27   400 (1967).  The "central purpose of the [FAA is] to ensure that private agreements to arbitrate

28   are enforced according to their terms."  *Mastrobuono v. Shearson Lehman Hutton. Inc.*, 514

*United States District Court*
For the Northern District of California

U.S. 52, 53-54 (1995). The "preeminent concern of Congress in passing the [FAA] was to enforce private agreements into which parties had entered, a concern which requires that [courts] rigorously enforce agreements to arbitrate." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625-26 (1985) (quotations omitted).

Finally, notwithstanding the liberal policy favoring arbitration, by entering into an arbitration agreement, two parties are entering into a contract. *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 479 (1989) (noting that arbitration "is a matter of consent, not coercion."). Thus, as with any contract an arbitration agreement is "subject to all defenses to enforcement that apply to contracts generally." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003). Although the Court can initially determine whether a valid agreement exists, disputes over the meaning of specific terms are matters for the arbitrator to decide. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002); *Prima Paint*, 388 U.S. at 403-04 (holding that "a federal court may consider only issues relating to the making and performance of the agreement to arbitrate").

**B.      The Arbitration Agreement Applies to Plaintiffs' Suit.**

Plaintiffs argue that no valid arbitration agreement exists because Plaintiffs' customer agreements had expired by the time Plaintiffs' claims arose. (Plaintiffs' Opposition to DirecTV's Motion ("Opp.") at 3.) Alternatively, Plaintiffs argue that their claims are outside the scope of the arbitration agreement. (*Id.* at 8.) For the following reasons, the Court finds both of these arguments unpersuasive.

**1.      The arbitration agreement did not expire before Plaintiffs' claim arose.**

Plaintiffs contend that the arbitration provision in their Customer Agreements ("CAs") with DirecTV does not bind them here because the provision, as a part of Plaintiffs' CAs with DirecTV, "terminated by [its] own terms years ago," upon Plaintiffs' cancellation of their DirecTV service. (Opp. at 3-4.) Plaintiffs argue that when they cancelled their DirecTV service, the contract governing that service expired, and with it, terminated the arbitration provision therein. (*Id.*) However, Plaintiffs are mistaken that the CAs terminated "by its own terms" upon cancellation of service. In fact, section 5(a) of the CAs, labeled "Term" explicitly

United States District Court

For the Northern District of California

3

United States District Court

For the Northern District of California

1  states just the opposite: "The term of this Agreement is indefinite and Service will continue

2  until canceled as provided herein."  (Declaration of Valerie McCarthy ("McCarthy Decl."), Ex.

3  A at § 5(a).)

4          Furthermore, it is well settled that courts must hold "arbitration agreements to a life and

5  validity separate and apart from the agreement in which they are imbedded." *Berkery v. Cross*

6  *Country Bank*, 256 F. Supp. 2d 359, 368 (E.D. Pa. 2003).  This is because "the duty to arbitrate

7  does not necessarily end when the contract is terminated." *Aspero v. Shearson Am. Express,*

8  *Inc.*, 768 F.2d 106, 108 (6th Cir. 1985).  The United States Supreme Court has rejected the

9  argument proposed by Plaintiffs here, "that the duty to arbitrate, being strictly a creature of

10 contract, must necessarily expire with the ... contract that brought it into existence." *Nolde*

11 *Bros., Inc. v. Local No. 358, Bakery & Confectionary Workers Union*, 430 U.S. 243, 250

12 (1977).  The *Nolde Bros.* Court held that where a "dispute is over a provision of [an] expired

13 agreement, the presumptions favoring arbitrability must be negated expressly or by clear

14 implication." *Id.* at 255.

15         Plaintiffs urge this Court to apply *Litton Financial Printing Division v. NLRB*, in which

16 the United States Supreme Court clarified that a grievance arising after a contract expires is

17 only presumptively arbitrable if it arises from the contract.  501 U.S. 190, 205-06 (1991).  The

18 Supreme Court held that a dispute only arises from a contract if "it involves facts and

19 occurrences that arose before expiration, where an action taken after expiration infringes a right

20 that accrued or vested under the agreement, or where ... the disputed contractual right survives

21 expiration of the remainder of the agreement." *Id.*  However, *Litton* does not support Plaintiffs'

22 argument that the arbitration clause here has expired.

23         First, as already noted, the contract here had no expiration date but, rather, expressly

24 indicated that its term was "indefinite."  (McCarthy Decl., Ex. A at § 5(a).)  In contrast, the

25 *Litton* contract had an express termination date, and the dispute unquestionably arose

26 afterwards.  501 U.S. at 205.  Even if, as Plaintiffs assert, the CAs terminated upon cessation of

27 services, *Litton* still fails to support their argument.  Plaintiffs claim that the dispute here could

28 only have arisen after the CAs were terminated because the dispute concerns DirecTV's

United States District Court

For the Northern District of California

1  retention of data after Plaintiffs had cancelled their DirecTV service.  (Opp. at 5.)  Putting aside

2  the fact that the CAs did not in fact expire upon cessation of service, Plaintiffs defeat their own

3  argument later in their brief by claiming that DirecTV's information retention "deprived

4  [Plaintiffs] of paid-for privacy protections."  (*Id*. at 16.)  Plaintiffs claim that, by retaining their

5  information after Plaintiffs had terminated service, DirecTV failed to honor its obligations

6  under the CAs.  As such, Plaintiffs' own allegations demonstrate that their suit involves "an

7  action taken after expiration [that] infringes a right that accrued or vested under the agreement."

8  *See Litton*, 501 U.S. at 205-06.  Thus, even under the *Litton* analysis, the CA's arbitration

9  clause applies to Plaintiffs' dispute.

10              **2.       Plaintiffs' dispute falls under the scope of the arbitration provision.**

11             Plaintiffs argue that, aside from having expired, the CAs' arbitration provision does not

12  apply to their dispute because "the Privacy Policy—not the CA—speaks to DirecTV's data

13  retention and disclosure policies."  (Opp. at 8.)  Plaintiffs are referring to CA section 6, labeled

14  "Personal Data," which states: "We collect personally identifiable information about our

15  customers .... The use and disclosure of this Personal Data is governed by our Privacy Policy

16  and ... by this Agreement."  (McCarthy Decl., Ex. A at § 6.)  Plaintiffs argue that their dispute

17  arises under the Privacy Policy, and that the Privacy Policy is not properly incorporated into the

18  CAs.  (Opp. at 8.)  Thus, Plaintiffs claim, their dispute is not governed by the CA's arbitration

19  provision.  (*Id*.)  The Court finds this argument unpersuasive.

20             "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning

21  the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone*, 460

22  U.S. at 24-25.  Here, the CAs' arbitration provision is worded very broadly.  It requires that

23  any claim "relating to [the CAs], any addendum, or your Service" be resolved by arbitration,

24  failing informal resolution.  (McCarthy Decl., Ex. A at § 9.)  Even assuming Plaintiffs are

25  correct, and the Privacy Policy is not properly incorporated into the CAs, Plaintiffs' argument

26  here fails for the same reason that their expiration argument fails: because Plaintiffs allege that

27  DirecTV's treatment of their personal information constitutes DirecTV's failure to perform its

28  obligations under the CAs.  (*See* Opp. at 16-17.)  Because this dispute is, by Plaintiffs' own

1   admission, related to the CAs, the dispute falls under the scope of the CAs' arbitration

2   provision.

3   **C.      The Arbitration Agreement is Not Unconscionable.**

4          Plaintiffs argue that the arbitration agreement is unenforceable because it is

5   unconscionable under both California and Florida law.  As a preliminary matter, Plaintiffs have

6   provided no support for their argument that the arbitration provision is unconscionable under

7   Florida law.  However, like California law, Florida law requires both procedural and substantive

8   unconscionability, and for the reasons below, the Court finds a fatal lack of substantive

9   unconscionability.  *See Gainesville Healthcare Center, Inc. v. Weston*, 857 So.2d 278, 284

10  (2003).  Thus, while the Court's analysis will be conducted pursuant to California law, its

11  finding would be the same under Florida law.

12         Plaintiffs correctly note that "unconscionability remains a basic contract defense that

13  may be used to invalidate arbitration provisions."  (Opp. at 9) (citing *AT & T Mobility LLC v.*

14  *Concepcion*, 131 S. Ct. 1740, 1746 (2011).)  Plaintiffs also acknowledge that "[l]ike other

15  contracts, an arbitration provision is invalid if it is both procedurally and substantively

16  unconscionable."  (*Id*.) (citing *Armendariz v. Foundation Health Psychare Serv., Inc.*, 24 Cal.

17  4th 83, 114-15 (2000).)  Courts apply a sliding scale when analyzing these two factors, but

18  "both must be present in order for a court to exercise its discretion to refuse to enforce a

19  contract or clause under the doctrine of unconscionability."  *Grabowski v. Robinson*, 817 F.

20  Supp. 2d 1159, 1171 (S.D. Cal. 2011) (quotation omitted).  "The party opposing arbitration has

21  the burden of proving the arbitration provision is unconscionable."  *Id*. (quotation omitted).

22  Here, while the arbitration provision in question may be minimally procedurally

23  unconscionable, it is not substantively unconscionable.

24         **1.      The arbitration provision is minimally procedurally unconscionable.**

25         Procedural unconscionability "analysis concerns the manner in which the contract was

26  negotiated and the circumstances of the parties at that time.  The element focuses on oppression

27  or surprise."  *Gatton v. T-Mobile, USA, Inc.*, 152 Cal. App. 4th 571, 581 (2007) (quotations

28  omitted).  "Oppression arises from an inequality of bargaining power that results in no real

United States District Court
For the Northern District of California

6

United States District Court

For the Northern District of California

1   negotiation and an absence of meaningful choice." *Id.* (quotations omitted).  "Surprise is

2   defined as the extent to which the supposedly agreed-upon terms of the bargain are hidden in

3   the prolix printed form drafted by the party seeking to enforce the disputed term." *Id.*

4   (quotations omitted).

5          The arbitration provision at issue here is minimally procedurally unconscionable

6   because it is undisputedly a contract of adhesion.  As DirecTV correctly notes, "California

7   courts recognize that adhesion only 'establishes a minimal degree of procedural

8   unconscionability.'" (Reply in Support of DirecTV's Motion to Compel Arbitration ("Reply")

9   at 12 (citing *Gatton*, 152 Cal. App. 4th at 585).)  Plaintiffs argue that the arbitration provision

10  here is further procedurally unconscionable because consumers wishing to opt out of the

11  provision would have to cancel their DirecTV service and pay a $15 fee.  (Opp. at 10 (citing

12  McCarthy Decl., Ex. A at § 2(c)(9).)  Plaintiffs speculate as to further cancellation costs but

13  make no showing that such costs could be or have been incurred by Plaintiffs or any other

14  DirecTV customer.  (*Id.*)  Any procedural unconscionability posed by the $15 fee is so minimal

15  that it is subsumed in that which arises from the adhesive nature of the contract.

16         Plaintiffs argue that "DirecTV's provision is also procedurally unconscionable because

17  it incorporates the rules of a specific type of arbitration (JAMS) but fails to provide the JAMS

18  arbitration rules to the customer."  (Opp. at 11.)  Plaintiffs provide support for the proposition

19  that the failure to provide arbitration rules can be deemed procedurally unconscionable.  (*Id.*

20  (citing *Trivedi v. Curexco Technology Corp.*, 189 Cal. App. 4th 387, 393 n.4 (2010); *Harper v.*

21  *Ultimo*, 113 Cal. App. 4th 1402, 1406-07 (2003).)  However, more recent cases have held that

22  procedural unconscionability can be avoided if the arbitration rules are incorporated into the

23  contract by reference, such incorporation is clear, and the rules are readily available.  *Ulbrich v.*

24  *Overstock.Com, Inc.*, 2012 WL 3631498, at *6 (N.D. Cal. Aug. 15, 2012); *see also Medlin Ins.*

25  *Agency v. QBE Ins. Corp.*, 2012 WL 2499952, at *5 (E.D. Cal. June 27, 2012) (holding that

26  failure to provide arbitration rules is not, itself, enough to establish procedural

27  unconscionability).

28

7

United States District Court

For the Northern District of California

1    Here, the arbitration provision incorporates the JAMS rules clearly and explicitly,

2    stating that any arbitration "will be conducted under the rules of JAMS."  (McCarthy Decl., Ex.

3    B at § 9(b).)  Contrary to Plaintiffs' assertion that "DirecTV's provision fails to specify which

4    version of the rules ... supposedly applies," the provision in fact states that the applicable rules

5    are those "in effect at the time the arbitration is initiated."  (Opp. at 11; *id.*)  Nor have Plaintiffs

6    satisfied their burden to demonstrate that the JAMS rules are now, or were ever, not readily

7    available.  In fact, Plaintiffs have not even alleged as much.

8    Finally, Plaintiffs argue that DirecTV's arbitration clause is "deceptive" because it

9    "merely states: 'Arbitration means you waive your right to a jury trial.'" (Opp. at 12.)  Plaintiffs

10   argue that this statement is "misleading."  (*Id.*)  However, that statement is factually true and

11   bears none of the many obfuscations present in the arbitration provision found to be

12   procedurally unconscionable in Plaintiffs' sole citation, *NAACP of Camden Cnty. E. v. Foulke*

13   *Mgmt. Corp.*.  24 A.3d 777 (N.J. Sup. Ct. App. Div. 2011); *see also*, *Armendariz*, 24 Cal. 4th at

14   118 (noting that a party waives the right to a jury upon agreeing to arbitrate).  In the *NAACP*

15   case, there were multiple arbitration provisions, scattered across multiple documents, many of

16   which contradicted each other.  24 A.3d at 794.  That is simply not the case here.

17   In all, the Court finds that DirecTV's arbitration provision is minimally procedurally

18   unconscionable due to the adhesive nature of the contract and thus, in the balance, turns to the

19   question of substantive unconscionability.

20          **2.     The arbitration provision is not substantively unconscionable.**

21   Plaintiffs argue that DirecTV's arbitration provision is substantively unconscionable

22   because it lacks both mutuality and the "customer-friendly" provisions that Plaintiffs argue the

23   Supreme Court's decision in *Concepcion* turned on.  (Opp. at 12-13.)  For the following

24   reasons, the Court finds neither argument convincing and finds that the DirecTV arbitration

25   provision bears no indicia of substantive unconscionability.

26   Unlike procedural unconscionability, which focuses on the manner in which agreement

27   to a disputed term was sought or obtained, substantive unconscionability relates to the actual

28   terms of the arbitration agreement and whether those terms are "overly harsh" or "generate one-

8

**United States District Court**
For the Northern District of California

1    sided results." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1281 (9th Cir. 2006) (quotations

2    omitted). "The paramount consideration in assessing conscionability is mutuality." *Id.*

3    (quotations omitted).

4            Indeed, Plaintiffs first argue that the provision is substantively unconscionable because

5    it lacks mutuality. Plaintiffs are correct in their assertion that an arbitration provision is

6    substantively unconscionable if it binds only one party and not the other. (Opp. at 12; *see*

7    *Monzon v. Southern Wine & Spirits of California*, 834 F. Supp. 2d 934, 942 (2011).) However,

8    the California standard provides that only a "modicum of bilaterality" is required to save an

9    agreement from substantive unconscionability. *Bischoff v. DirecTV*, 180 F. Supp. 2d 1097,

10   1112 (C.D. Cal. 2002). Plaintiffs here have failed to show the lack of such a modicum of

11   bilaterality in the DirecTV provision.

12           Plaintiffs claim that the provision here "would compel arbitration of all claims brought

13   by customers, while providing DirecTV the freedom to file suits at its whim," because

14   "DirecTV's arbitration clause specifically exempts claims ... that only DirecTV would ever be

15   in a position to bring." (Opp. at 13.) The provision states that "any Claim [either party] asserts

16   will be resolved only by binding arbitration." (McCarthy Decl., Ex. C at § 9(b).) However, it

17   excludes certain claims, such as those brought under certain federal statutes and laws

18   "governing theft of service," which may be litigated in court by either party. (*Id.* at § 9(d).)

19   Plaintiffs have provided no support for their statement that such exceptions to the arbitration

20   provision create non-mutuality by exempting from arbitration suits "that only DirecTV would

21   ever be in a position to bring." (Opp. at 13.)

22           Other courts analyzing DirecTV's arbitration provision have rejected Plaintiffs'

23   argument. The Central District of California, for example, held that the exact exemptions now

24   disputed by Plaintiffs do not limit the right to litigate the excepted claims to DirecTV only, "and

25   it is conceivable that a [customer] might have a claim against" DirecTV for such claims. *In re*

26   *DirecTV Early Cancellation Fee Mktg. and Sales Practices Litig.*, 810 F. Supp. 2d 1060, 1069

27   (C.D. Cal. 2011).

28

United States District Court
For the Northern District of California

1    In the *In re DirecTV* case, the plaintiff made the identical argument to Plaintiffs'

2    contention here: that "the Customer Agreement 'requires one contracting party, but not the

3    other, to arbitrate all claims.'" *Id*. The court dismissed this argument, finding that "even a

4    quick reading of the Arbitration Clause reveals that this is untrue." *Id*. Another Central District

5    of California court similarly found that even if DirecTV's "arbitration clause ... in fact

6    contain[s] certain unilateral effects, it is not unconscionably unilateral." *Bischoff*, 180 F. Supp.

7    2d at 1112. This Court agrees and finds that there is sufficient bilaterality in the arbitration

8    provision here.

9    Finally, Plaintiffs argue that DirecTV's arbitration clause is "replete with

10   unconscionable provisions" because it "contains none of the supposedly 'customer-friendly'

11   attributes present in the provision upheld in *Concepcion*." (Opp. at 13.) Plaintiffs refer to only

12   one such aspect of the *Concepcion* provision: that "AT&T had agreed to pay a $10,000 bonus to

13   any consumers whose arbitration awards exceeded AT&T's last settlement offer." (*Id*.)

14   The primary defect in Plaintiffs' argument is that it is logically erroneous: the arbitration

15   provision does not gain unconscionability by lacking consumer-friendly provisions, as Plaintiffs

16   suggest. Plaintiffs' argument is based on a second faulty premise: that the *Concepcion* ruling

17   was dependent on the consumer-friendly aspects of the provision at issue in that case. In fact,

18   and as DirecTV has demonstrated, courts have generally rejected this very claim. *See e.g.*,

19   *Adams v. AT&T Mobility LLC*, 816 F. Supp. 2d 1077, 1088 (W.D. Wash. 2011) ("The court ...

20   observes that the decision in *Concepcion* did not depend on the relatively consumer-friendly

21   terms of" the arbitration agreement at issue there). Because the *Concepcion* Court did not

22   depend on the consumer-friendly aspects of the provision there in order to uphold it, Plaintiffs'

23   argument fails. This Court will not strike down an arbitration provision as unconscionable on

24   the grounds that it lacks consumer-friendly attributes that were *not* decisive in the *Concepcion*

25   case.

26   Furthermore, DirecTV's provision does indeed contain consumer-friendly provisions.

27   For example, DirecTV has taken on the responsibility of paying all arbitration costs beyond the

28   filing fee, which itself is not to exceed $125. (McCarthy Decl., Ex. C at § 9(b).) Also, the

10

arbitration hearings take place in the customers' hometowns, and under the laws of their home states. (*Id*.)  The Court thus finds no substantive unconscionability on this or on any other grounds presented by Plaintiffs.  As noted above, both procedural and substantive unconscionability are required if an arbitration provision is to be deemed unenforceable on unconscionability grounds. *See Concepcion*, 131 S.Ct. at 1746.  Because the Court finds DirecTV's arbitration provision lacks any indicia of substantive unconscionability, it is enforceable.

**D.     No Arbitration-Related Discovery is Necessary.**

Plaintiffs move for leave to conduct arbitration-related discovery in order to bolster their contention that DirecTV's arbitration provision is unconscionable.  Plaintiffs' argument is premised upon California Civil Code section 1670.5(b) which provides for arbitration-related discovery upon a claim or appearance of unconscionability.  (Motion for Leave to Conduct Arbitration-Related Discovery at 4 (citing Cal. Civ. Code § 1670.5(b.).)  That section allows the parties "a reasonable opportunity to present evidence as to [the provision's] commercial setting, purpose, and effect to aid the court in making the [unconscionability] determination."  Cal. Civ. Code § 1670.5(b).  Some courts have interpreted this "reasonable opportunity" language to allow for discovery on the question of unconscionability. *See, e.g., Hamby v. Power Toyota Irvine*, 798 F. Supp. 2d 1163, 1164 (2011).

Here, Plaintiffs' requested discovery would provide no new information that is necessary for the Court to determine the issue of unconscionability.  Plaintiffs have failed to request any discovery that would actually aid the Court in making an unconscionability determination.  Plaintiffs make several requests, most of which relate to the merits of their suit, rather than to unconscionability of the arbitration provision.  (*See e.g.*, Plaintiffs' First Set of Arbitration-Related Interrogatories at ¶ 12 ("State the number of Subscribers in the United States who signed up for satellite service with DirecTV, and whose personally identifiable information was retained by DirecTV after the termination of services").)  Further, Plaintiffs focus on DirecTV's customers in general, rather than on the only relevant customers, which are Plaintiffs themselves. (*See id*. at ¶ 4 ("[S]tate on an annual basis the number of disputes

United States District Court

For the Northern District of California

1  involving Consumers' Accounts where the amount in controversy was less than $15,000 that

2  were instituted and resolved in state and federal court").)

3      The court in *Meyer v. T-Mobile U.S.A. Inc.* dealt with a very similar situation.  836 F.

4  Supp. 2d 994, 1007 (2011).  There, the plaintiff was a consumer suing on behalf of herself and a

5  putative class, and she requested arbitration-related discovery on the issue of unconscionability.

6  *Id*. at 997; 1006-07.  However, like Plaintiffs' here, most of the *Meyer* plaintiff's discovery

7  requests did "not relate to the validity of *Plaintiff's* arbitration agreement with [the DirecTV].

8  Instead, they concern[ed] all agreements, disputes, arbitrations and lawsuits relating to T-

9  Mobile customers ... *other than Plaintiff*."  *Id*. at 1007.  The court there found that because the

10  only relevant document—the agreement between the plaintiff and T-Mobile—was readily

11  available to the court, no further discovery was necessary.  *Id*.

12      Similarly here, the only relevant document is the actual arbitration agreement that

13  Plaintiffs allege is unconscionable.[1]  Plaintiffs' further requests for information would not aid

14  the Court and would only serve to delay arbitration in contravention of the FAA and its stated

15  purpose.

16  **CONCLUSION**

17      For the foregoing reasons, the Court GRANTS DirecTV's motion to compel arbitration

18  and to stay proceedings pending arbitration.  The Court finds that the arbitration clause at issue

19  here is not unconscionable and DENIES Plaintiffs' motion for leave to conduct arbitration-

20  related discovery.

21      **IT IS SO ORDERED.**

23  Dated:  November 7, 2012

                           JEFFREY S. WHITE
                           UNITED STATES DISTRICT JUDGE

27      [1]  The Court notes that the Plaintiffs and DirecTV refer in their briefs to a few

28  different iterations of the CAs.  However, further discovery on this issue is obviated by the McCarthy Declaration, which  includes all the versions of the CAs that were sent to, and are thus applicable to, the Plaintiffs.